LOCAL UNION NO. 715, INTERNATION-
AL BROTHERHOOD OF ELECTRI-
CAL WORKERS, AFL–CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 72–1996.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 6, 1973.

Decided March 29, 1974.

George Kaufmann. Washington D. C.,
with whom Laurence J. Cohen, Washing-
ton, D. C., was on the brief, for petition-
er.

Patrick Hardin. Associate Gen. Coun-
sel. N.L.R.B., with whom John S. Irving,

Deputy Gen. Counsel, Elliott Moore, Acting Asst. Gen. Counsel, and Joseph E. Mayer, Atty., N.L.R.B., were on the brief, for respondent.

Before McGOWAN, TAMM and MacKINNON, Circuit Judges.

TAMM, Circuit Judge:

In Associated Press v. NLRB, 160 U. S.App.D.C. ——, 492 F.2d 662 (1974), we endorsed the Labor Board's *Spielberg* doctrine. The latter decision established the principle that the Board may, in appropriate cases, decline to entertain an unfair labor practice complaint arising from a dispute which has already been arbitrated. Spielberg Manufacturing Co., 112 NLRB 1080, 1082 (1955). The petition now before us requests that an order of the Board purporting to apply the *Spielberg* doctrine be set aside. The petition is granted in part and denied in part.

The petitioner herein, Local 715, IBEW, charges that the employer, a radio station operator, violated its duty to bargain collectively by unilaterally changing the working conditions of its employees. Specifically, the union complains of the employer's decision in 1968 to initiate full time "combo" operation. This term denotes the assignment of a single employee as both announcer and engineer—a method of operation which had previously been used only during the night shift. The change was apparently occasioned by the station's shift

from a foreign language format to a country-western format. The union argues that daytime "combo" operation was not permitted under its contract. The company takes the opposite position. The matter was submitted to arbitration in 1969 and an award was issued in January, 1970, sustaining the union's position.[1] When the company refused to comply with the award, the union filed the instant unfair labor practice charges. On the basis of these charges, the Board's General Counsel issued a complaint against the company alleging a unilateral change of contract terms and employment conditions regarding "combo" operation—a violation of sections 8(a)(1), (5) and 8(d) of the National Labor Relations Act, 29 U.S.C. § 158 (1970). The trial examiner concluded that the company's conduct violated the Act and recommended a cease and desist order and various other relief. The Board did not adopt the recommendation, but dismissed the complaint. Citing the *Spielberg* decision, the Board concluded that deferral to the arbitration award was proper despite the company's refusal to comply with it. Malrite of Wisconsin, Inc., 198 NLRB No. 3 (1972).

At the outset we wish to address the petitioner's interpretation of the *Spielberg* deferral doctrine. The union urges a narrow reading. It argues that *Spielberg* simply requires the Board to accept the arbitrator's construction of the dis-

---

1. The collective bargaining agreement contained the following provisions for the resolution of contract disputes (J.A. at 123):

Section 2:01. All questions, disputes, or grievances as to the interpretation, application, or performance of the terms of this agreement shall first be taken up for adjustment between the Employer and the Steward of the Union. In the event no satisfactory settlement of the issue is reached, it shall then be considered by the Employer and an authorized representative or representatives of the Union, and should they fail to adjust the matter, either party may require arbitration of such issue by giving written notice to the other.

Section 2:02. Any matter that is not adjusted by the Employer and the Union, as

provided in Section 2:01 of this Article, shall be referred to a Board of Arbitration consisting of one representative of the Employer, one representative of the Union, and a third member to be selected by these two representatives, who shall be Chairman. In the event the two representatives of the Board of Arbitration fail to select the third member within seven days, the Director of the Federal Mediation and Conciliation Service will be requested to appoint the third member. The majority decision of the Board shall be final and binding on both parties. Each party shall defray the expenses of its representative on the Board, and the fees and expenses of the third member shall be borne equally by the parties.

puted contract provisions, but does not relieve the Board of its duty to remedy unfair labor practices related to the dispute. The union reasons that statutory violations (unfair labor practices)—unlike mere contractual breaches—affect public interests which can only be vindicated through Board remedies.[2]

▪ The petitioner misapprehends the *Spielberg* rule. The Board has made it clear that, when deferral is appropriate, the arbitration award becomes the sole remedy for both contractual and statutory violations:

> If complete effectuation of the Federal policy is to be achieved, we firmly believe that the Board, which is entrusted with the administration of one of the many facets of national labor policy, should give hospitable acceptance to the arbitral process as "part and parcel of the collective bargaining process itself," and *voluntarily withhold its undoubted authority to adjudicate alleged unfair labor practice charges involving the same subject matter*, unless it clearly appears that the arbitration proceedings were tainted by fraud, collusion, unfairness, or serious procedural irregularities or that the award was clearly repugnant to the purposes and policies of the Act.

International Harvester Co., 138 NLRB 923, 927 (1962), aff'd sub nom. Ramsey v. NLRB, 327 F.2d 784 (7th Cir.), cert. denied, 377 U.S. 1003, 84 S.Ct. 1938, 12 L.Ed.2d 1052 (1964) (footnote omitted, emphasis added). In the absence of procedural irregularity or statutory repugnancy, therefore, the Board is free to adopt the arbitral award as a complete remedy for unfair labor practices related to the contractual dispute, even though the Board has exclusive authority to adjudicate unfair labor practice charges. Contrary to the union's con-

tentions here, the Board is not obliged to entertain the unfair labor practice charges after a proper deferral.

▪ Having stated our understanding of the *Spielberg* decision, it remains for us to determine whether the doctrine was properly applied in the present case. The *Spielberg* opinion itself established three prerequisites for deferral to an arbitration award. Deferral is indicated if the arbitration proceedings were fair and regular, all parties agreed to be bound by the award and the decision of the panel is not clearly repugnant to the purposes and policies of the National Labor Relations Act. Both the trial examiner and the Board agree that the award in this case satisfies all three conditions.[3] The trial examiner nonetheless declined to honor the arbitration award because of the employer's refusal to comply with it. The Board reversed the examiner and dismissed the complaint, stating that the Company's failure to obey the arbitration award was irrelevant:

> In its formulation of the *Spielberg* standards the Board did not contemplate its assumption of the functions of a tribunal for the determination of arbitration appeals and the enforcement of arbitration awards. If the Board's deference to arbitration is to be meaningful it must encompass the entire arbitration process, including the enforcement of arbitral awards. It appears that the desirable objective of encouraging the voluntary settlement of labor disputes through the arbitration process will best be served by requiring that parties to a dispute, after electing to resort to arbitration, proceed to the usual conclusion of that process—jucicial [sic] enforcement—rather than permitting them to invoke the intervention of the Board.

. . . . . .

---

2. The distinction between contractual and statutory rights was found to be significant in a recent decision concerning the effect of arbitration awards upon actions under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (1970). Alexander v. Gard-

ner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

3. Trial Examiner's Decision at 6, J.A. at 22; Malrite of Wisconsin, Inc., 198 NLRB No. 3 at 3 (1972).

Indeed, direct court enforcement of arbitrator's awards can provide more prompt and effective action than a procedure which requires a second trial before one of our Trial Examiners, an appeal to this Board, and only then a court proceeding which can lead to an enforceable decree. Surely immediate access to the court is to be preferred over this long administrative route, and this is the course we are here encouraging these and future disputants to follow. Accordingly, we shall dismiss the complaint in its entirety.

198 NLRB No. 3 at 4, 5 (1972).

■■ We agree with the Board that the employer's recalcitrance following arbitration does not preclude deferral to the award. The policy established by *Spielberg* is to withhold Board processes where private methods of settlement are adequate. In this case, the arbitration process has foundered, but it has not proven inadequate. The union may yet obtain compliance with the award by means of a suit for its enforcement. As long as the remedy of judicial enforcement is available,[4] the force of the *Spielberg* doctrine is not diminished by one party's disregard for the arbitral award.[5] The Board acted within its discretion, therefore, in insisting that the union pursue the judicial remedy.

The union raises one further objection to the Board's order. It concerns the charge that the employer bargained individually with members of the union—an unfair labor practice distinct from the unilateral change of working conditions which allegedly occurred with the institution of full-time "combo" operation. The trial examiner found that the employer had dealt individually with five of its engineers regarding "combo" assignments. As to two of these, however, he concluded that the union's charges had not been timely filed. This ruling is not disputed here. As to the remaining three employees, the examiner ruled that the employer had committed an unfair labor practice in violation of sections 8(a)(5) and (1) of the National Labor Relations Act.

■ As we have already observed, the Board rejected the trial examiner's decision and dismissed the entire complaint, citing *Spielberg*. The Board's opinion does not discuss the individual bargaining problem, but it is apparent that deferral with respect to that issue was erroneous. All three of the individual bargaining charges which were sustained by the trial examiner relate to events which occurred *after* the arbitration hearing. Inasmuch as the arbitrators could not have considered these transactions, it is difficult to agree with the Board's conclusion that judicial enforcement of the award will provide "full remedial relief."[6] In fact, this reasoning appears to contradict the Board's own decisions to the effect that deferral is not appropriate with respect to an issue not considered by the arbitration panel. Raytheon Co., 140 NLRB 883, 885 (1963), set aside on other grounds, 326 F.2d 471 (1st Cir. 1964); Monsanto Chemical Co., 130 NLRB 1097 (1961). The gist of these decisions and others is that deferral on an issue not considered by the arbitrator cannot be

---

4. The union argued that judicial enforcement of the award is precluded by the vagueness of the award and the mootness of the controversy following expiration of the contract in question. These contentions can only be tested in a suit for enforcement of the award. The Board properly assumed that judicial enforcement was available in the absence of a judicial ruling to the contrary.

5. In a *Collyer* (pre-arbitral) context, of course, the company's refusal to comply with a past award would have an entirely different significance. Such conduct might well suggest that pre-arbitral deferral is not likely to advance the federal policy favoring voluntary settlement of labor disputes. *See* Local Union No. 2188, IBEW v. NLRB, 161 U.S. App.D.C. ——, at ——, 494 F.2d 1087, at 1090 (1974).

6. 198 NLRB No. 3 at 5.

justified by the policy which underlies the doctrine of deferral:

It manifestly could not encourage the voluntary settlement of disputes or effectuate the policies and purposes of the Act to give binding effect in an unfair labor practice proceeding to an arbitration award which does not purport to resolve the unfair labor practice issue which was before the arbitrator and which is the very issue the Board is called upon to decide in the proceeding before it.

Monsanto Chemical Co., 130 NLRB at 1099.

The petition is granted in part and this matter is remanded to the Board for further consideration of the trial examiner's conclusions with respect to individual bargaining. In all other respects the petition is denied.

So ordered.