Arthur N. STEPHENSON, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 75–3688.

United States Court of Appeals,
Ninth Circuit.

March 23, 1977.

Arthur N. Stephenson, pro se.

Elliott Moore and David A. Fleischer, argued, Attys., Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., Wilford W. Johansen, District Director, Region 21, N.L.R.B., Los Angeles, Cal., for respondent.

Before BARNES and ELY, Circuit Judges, and KUNZIG,[*] Judge, Court of Claims.

BARNES, Senior Circuit Judge:

Arthur N. Stephenson petitions this court to review the dismissal[1] of his unfair labor practice complaint by the National Labor Relations Board ("the Board") in deference to a decision on the matter by an arbitration panel.

While there are slight differences between the facts alleged by petitioner and those alleged by the Board in their respec-

---

[*] The Honorable Robert L. Kunzig, Court of Claims, Washington D.C., sitting by designation.

1. 220 NLRB No. 199 (1975).

tive briefs, the primary and controlling issue before this court is whether the Board properly deferred to the decision of the grievance committee set up under the arbitration provisions of the collective bargaining agreement. For reasons of economy of space we will not repeat the parties' summaries of facts.

■ While Section 10(a) of the National Labor Relations Act ("Act") empowers the Board to prevent the commission of unfair labor practices, it has been held that the presence of arbitration machinery does not oust the Board of jurisdiction to adjudicate unfair labor practices. *Hawaiian Hauling Service, Ltd. v. NLRB,* 545 F.2d 674, 675–676 (9th Cir. 1976), cert. petition filed on March 15, 1977, 45 U.S.L.W. 3619. The case law is settled, however, that the Board has considerable discretion to respect an arbitration award and can decline to exercise authority over alleged unfair labor practices, if to do so serves the fundamental purposes of the Act: to minimize industrial strife and promote stability thru collective bargaining—*i. e.,* fair and friendly adjustments are preferable. *Carey v. Westinghouse Corp.,* 375 U.S. 261, 270–271, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964); *Associated Press v. NLRB,* 160 U.S.App.D.C. 396, 492 F.2d 662, 667 (1974); *Spielberg Manufacturing Co.,* 112 NLRB 1080, 1082 (1955) ("*Spielberg*"); *see also* 29 U.S.C. § 173(d).

■ But the Board should not defer when the issue presented involves primarily a statutory rather than a contractual or factual issue. *Cf. Local U. No. 715, Int. Brs. of Electrical Wkrs. v. NLRB,* 161 U.S. App.D.C. 217, 494 F.2d 1136, 1137–1138 (1974); *Local Union No. 2188, Int. Brs. of Elec. Wkrs. v. NLRB,* 161°U.S.App.D.C. 168, 494 F.2d 1087, 1090–1091, *cert. denied,* 419 U.S. 835, 95 S.Ct. 61, 42 L.Ed.2d 61 (1974). When the arbitration proceedings show a specific refusal to pass upon a statutory issue, the Board should not defer. Likewise, when the arbitrator does not consider the statutory issues, the Board should do so. *John Klann Moving and Trucking Co. v. NLRB,* 411 F.2d 261, 263 (6th Cir.), *cert.*

*denied,* 396 U.S. 833, 90 S.Ct. 88, 24 L.Ed.2d 84 (1969); *cf. NLRB v. International Longshoremen's & W. U.,* 514 F.2d 481, 483 (9th Cir. 1975). *A priori,* when it is impossible to determine what issues the arbitration panel considered, or if the arbitration panel has not considered the statutory issue fairly and consistently with the precepts and purposes of the Act, then the Board should also not defer. *Banyard v. NLRB,* 164 U.S.App.D.C. 235, 505 F.2d 342, 347 (1974); *see also* Morris (ed.), *The Developing Labor Law,* 490, 494–495 (1971).

■ *Spielberg* approved deference to arbitration, if:

(1) the proceedings appear to be fair and regular;

(2) all parties had consented to be bound by the arbitrator's decision; and

(3) the award was not repugnant to the purposes and policies of the Act.[2]

Originally, the Board developed a policy that it would not consider deferring to an award even though the *Spielberg* requirements had been satisfied unless the unfair labor practice issue was both presented to and acted upon by the arbitrator. *Yourga Trucking Inc.,* 197 NLRB 928 (1972); *Airco Industrial Cases,* 195 NLRB 676 (1972). But these latter two cases were overruled in *Electronic Reproduction Service Corp.,* 213 NLRB 758 (1974) ("*Electronic Reproduction*"), and the Board's deferral policy established in *Spielberg* was expanded. In *Electronic Reproduction,* the union had chosen not to present any evidence of discrimination in employee discharges to the arbitrator. The Board stated that to prevent the withholding of evidence of unfair labor practices before the arbitrator in order to obtain a second hearing before the Board, it would defer to the arbitration award even when no indication existed as to whether the arbitrator had considered, or had been presented with, the unfair labor practice issue; *unless* "unusual circumstances" were present, *e. g.,* where (1) the arbitration clause was not broad enough to include the

**2.** *See* Comment, The NLRB and Deference to Arbitration, 77 Yale L.J. 1191, 1192 (1968).

unfair labor practice issue; or (2) where the arbitrator does not decide the statutory issue, either because he is unwilling, unable or prevented from doing so by the parties.

There has been unfavorable comment on the extension of *Spielberg* by the *Electronic Reproduction* decision.[3]

In addition to the fact that there has been little acceptance of *Electronic Reproduction* by the courts and by legal commentators, the District of Columbia Circuit, in *Banyard, supra,* 505 F.2d at 347, has suggested that two prerequisites should be added to *Spielberg,* before deferral can be held proper:

(1) the arbitral tribunal must have *clearly decided* the unfair labor practice issue on which the Board is later urged to give deference; and

(2) the arbitral tribunal must have decided only issues within its competence.

■ We approve the addition of the two requirements, and the resulting five pronged test suggested in *Banyard.*[4] We now turn to the present case.

While the Board in affirming the decision of the administrative law judge relied solely on *Spielberg,* it is evident that such reliance is misplaced. The record herein gives no

3. *See* Simon-Rose, Deferral under *Collyer* by the NLRB of Section 8(a)(3) cases, 27 Labor L.J. 201, 209–212 (1976) ("Simon-Rose"); Schatzki, Majority Rule, Exclusive Representation, and the Interests of Individual Workers: Should Exclusivity be Abolished?, 123 U.Penn. L.Rev. 897, 909, n. 31 (1975).

4. As there has been some criticism that the *Banyard* requisites are not sufficiently defined, *see* Recent Cases, *Banyard v. NLRB,* 88 Harv.L. Rev. 804, 810 (1975), some additional delineation is warranted.

The "clearly decided" requirement means that the arbitrator's decision must specifically deal with the statutory issue. Merely because the arbitrator is presented with a problem which involves both contractual and unfair labor practice elements does not necessarily mean that he will adequately consider the statutory issue, and merely because he considers the statutory issue does not mean that he will enforce the rights of the parties pursuant to and consistent with the Act. The "clearly decided" requisite is designed to enable the Board and the courts to fairly test the standards applied by the arbitrator against those required by the Act. Where the arbitrator sets out his decision and reasons in writing, it can be determined whether or not he has clearly decided the statutory issue. However, it is not concluded here that the "clearly decided" requirement demands a written memorandum in every situation. If there is substantial and definite proof that the unfair labor practice issue and evidence were expressly presented to the arbitrator and the arbitrator's decision indisputably resolves that issue in a manner entirely consistent with the Act, then further inquiry would be superfluous where the issue was within the arbitrator's competence to decide. Conversely, where, as here, there is no proof that the unfair labor practice issue or evidence was ever presented to the arbitrator and/or the arbitrator's decision is ambiguous as to the resolution of the statutory issue, then the "clearly decid-

ed" requirement has not been met. In *Banyard, supra,* the two arbitration decisions were extremely brief and gave no indication of the basis of the awards. The Board deferred citing *Spielberg.* The court held the deference to be improper as the Board did not know what was considered by the arbitrators and consequently was relying upon mere speculation.

The "competence" criterion is a more difficult factor to describe. It arises from the belief that deference is appropriate only where there is a congruence between the statutory and contractual issues. *Banyard, supra,* 505 F.2d at 348; *Local Union No. 2188, supra,* 494 F.2d at 1091. Where the question of unfair labor practice depends on contract interpretation, the expertise of arbitrators (or at least its recognition by the parties to the collective bargaining agreement) is held to be superior to that of the Board which primarily considers the statutory issues. Thus, deference in situations where the statutory and contractual issues are congruent is entirely reasonable. Likewise, where resolution of the unfair labor practice charge involves mainly factual rather than statutory issues, the arbitrator is in as good a position to make a correct decision as is the Board, given the former's access to the facts and to the current practices of the industry. *See Collyer Insulated Wire,* 192 NLRB 837, 842 (1971). However, where the decision to be made rests primarily on issues of public law rather than on contractual or factual determinations, the arbitrator possesses no special expertise and there is no reason for allowing his decision to determine the statutory rights of the parties. *See Alexander v. Gardner-Denver,* 415 U.S. 36, 57, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). Therefore, the "competence" requirement requires the Board to ascertain the underlying issues in the unfair labor practice charges and to determine whether arbitral expertise and institutional competence justify deferral to arbitration of a particular statutory dispute.

indication as to whether the issue of discriminatory discharge under Sections 8(a)(1) and (3) of the Act was presented to or considered by the arbitration panel. Therefore, any deference to the arbitration award must be grounded on the presumption that the issue was considered pursuant to the determination of whether there was "just cause" for the discharge. The applicable rule to justify that presumption, and hence the deferral, is *Electronic Reproduction,* as was noted by the administrative law judge.[5]

*Electronic Reproduction* is obviously an attempt to further encourage the voluntary settlement of labor disputes. While that goal is laudable, the Board's method constitutes an unjustifiable extension of its deferral policy.

■ Given that many grievances cognizable under the terms of an arbitration clause can also be framed in terms of an unfair labor practice, many statutory violations are breaches of contract as well. However, the function of an arbitration panel is to resolve disputes based upon the expressed commitment of the parties to the collective bargaining agreement and to the arbitration procedure incorporated therein. Consequently, the arbitrator's domain mainly covers questions of contractual interpretation. *Alexander v. Gardner-Denver Co.,*

415 U.S. 36, 52–54, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). The Board, meanwhile, is concerned with the prevention of unfair labor practices under the federal labor laws and is thus primarily concerned with the statutory and policy considerations.[6]

■ Under *Electronic Reproduction,* the Board is now willing to defer to an arbitration award even though no indication is given that the arbitrator considered the unfair labor practice issue. Deferral in that situation is contrary to Section 10 of the Act wherein the Board is empowered to prevent unfair labor practices.[7] That power is specifically held "not to be affected by other means of adjustment or prevention that has been or may be established by agreement, law or otherwise. . . ." 29 U.S.C. § 160(a). Consequently while the Board may decide to defer where the situation justifies such action, the Board cannot abdicate its duty to consider unfair labor practice charges by deferring when it has no lawful or reasonable basis for doing so. Section 203(d), which is used by the majority in *Electronic Reproduction* to support their policy of deferral, states in part, "final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes *arising over the application or*

---

**5.** The General Counsel who represented Stephenson in the Board proceedings specifically raised the issue of whether the employer's discharge violated Sections 8(a)(1) and (3). The Board misreads Stephenson's complaint, interpreting it as concerned solely with the inadequacy of the lump-sum payment awarded by the grievance panel.

**6.** This difference is emphasized by the remedial powers of the two entities. The arbitration award is limited to the specific controversy at hand whereas the Board may issue orders which cover present and future actions as well as past practice and reach individuals who are not immediate parties to the collective bargaining agreements and/or the controversy under consideration.

**7.** In *Spielberg,* the Board's deference was reasonable as the unfair labor practice (the statutory) issue was so concomitant with an issue involving contractual interpretation that the latter was dispositive of the former. As contractual interpretation is within the area of the

arbitrator's presumed expertise, the deferral by the Board to that expertise is justified. Absent such congruence between the contractual and statutory issues, however, deference would be improper as the Board would be abdicating its authority to decide unfair labor practice charges to a decision-making body which is not competent to deal with those statutory issues as they are not within its realm of expertise, and which is under no obligation to consider them.

The Board's deferral policy established in *Collyer Insulated Wire,* 192 NLRB 837 (1971), is likewise justified as it merely requires the parties to first use the grievance/arbitration procedure which they themselves have agreed to before interjecting the Board into the dispute. This practice does not seek to *substitute* arbitral consideration of statutory issues for that of the Board but rather to promote the initial employment of the arbitration process in hopes of reaching settlement without government (the Board's) intervention.

*interpretation of an existing* collective bargaining agreement." (Emphasis added.) The legislative history of that section does not support the interpretation that arbitration is meant to be a substitute for Board resolution of statutory issues or that the arbitration process is a prerequisite for the resolution of unfair labor practice charges. *See Legislative History of the Labor Management and Relations Act of 1947* (1948); Simon-Rose, 27 Labor L.J. at 216.

It is illogical for the Board, which is responsible for resolving the unfair labor practice issue, to defer to a decision by an arbitrator, who is under no duty and indeed may not be particularly predisposed to consider the statutory issue, solely on the basis of a factually unfounded presumption that the arbitrator has considered the issue. Because arbitrators are not sub-branch of the Board and arbitration is a contractual mechanism, arbitrators are obligated to effectuate the will of the parties to the contract. Thus, they are not bound to apply the Board's or the courts' definition of contractual standards, or to enforce rights under the Act.

The record here clearly indicates that the *Spielberg* prerequisites were satisfied. First, as noted by the administrative law judge:

"There is nothing in the record relating to the grievance proceedings to indicate in any way that the Union was less than zealous in representing Stephenson. Indeed, the record warrants the finding that it represented him strongly and fairly."

The arbitration panel was composed of an equal number of union and employer related members. Second, the parties herein agreed to be bound by the arbitration award. The collective bargaining agreement between the union and the employer provides that the outcome of the grievance procedure "shall be final and binding on both parties." There is no evidence of any unwillingness on the part of Stephenson to the initial submission of his complaints to the arbitration panel. Third, the decision of the panel is not "clearly repugnant" to

the purposes and policies of the Act. Given the evidence of culpability by both Stephenson and the employer contained in the record, the decision reached by the arbitration panel seems a reasonable compromise. However, while the award itself may conform to the policies of the Act, there is no guarantee that the deferral by the Board is also consistent with the Act. *Local Union No. 2188, supra,* 494 F.2d at 1091.

As to the *Banyard* requirements, it is clear that the issue of Stephenson's warning and discharge notices and his contentions as to backpay are issues which are within the presumed expertise of the arbitration panel. Thus, the "competence" requisite is met herein.

■ The main problem in this case is that the arbitration panel did not "clearly decide the issue on which it is . . . urged that the Board should give deference." *Banyard, supra,* 505 F.2d at 347. The award by the panel did not state what issues were considered, what arguments were made or what evidence was presented. While the administrative law judge states that "it would perforce seem that the [unfair labor practice] issue was duly raised," there is no evidence to support that assumption. The protest papers filed on behalf of Stephenson by the Union do not mention any unfair labor practice issue but merely refer to the sufficiency of the warning and discharge notices and to the retroactive money claim. The Board, in its brief on appeal, points out that "in ordering Stephenson reinstated, the panel necessarily concluded that his discharge was at least in some respect improper." While some impropriety is suggested by the reinstatement, that impropriety may have been based on the inadequacy of the notices, the lack of sufficient "just cause" on the part of the employer, or some other fault rather than upon a finding or consideration of some unfair labor practice.

Likewise, the record is bare as to whether the arbitration panel was willing or able to consider the unfair labor practice charge. On the one hand, Stephenson may not have presented such evidence or sought to press

the issue. On the other hand, Stephenson may have presented the issue and evidence but the panel may have been unwilling to consider that element. As the decision of the panel is silent on the issues considered, and as the record gives no indication as to whether the unfair labor practice issue was presented, no determination can be made. Nevertheless, the deference policy established in *Electronic Reproduction* and applied in this case by the Board penalizes Stephenson despite that ambiguity. Such a result is not consistent with the policies of the Act. The Board cannot properly exercise its discretion in deferring to an arbitration decision when it is ignorant of the issues presented to and considered by that panel and of the basis for the latter's decision.

The deferral practice established in *Electronic Reproduction* is rejected as it permits the Board to base its deference upon mere presumption in total absence of any evidence. Instead the two additions to the *Spielberg* requirements established by the District of Columbia Circuit Court in *Banyard* are adopted. As the Board's deferral in the present case is based upon an arbitration award which fails to meet the "clearly decided" criteria, the Board's decision is reversed. Accordingly, the petition herein is remanded with instructions that, deferral being inappropriate, the Board should proceed to a consideration of the unfair labor practice issue in a manner not inconsistent with this opinion.[8]

KUNZIG, Judge,[*] dissenting:

I respectfully dissent from the conclusion of the majority. Despite oral argument by Government counsel which was of little or no assistance in this important matter, I am persuaded that the decision here should be in favor of the National Labor Relations Board (NLRB).

The majority places its reliance on *Banyard v. NLRB*, 164 U.S.App.D.C. 235, 505 F.2d 342 (1974), and, in fact, adopts this decision of the District of Columbia Circuit. I would not so extend the decision of the

---

**8.** Although respecting Judge Kunzig's dissenting views, the majority adheres to its conclusion. It still perceives the alternatives in this case to be between permitting the Board to defer to an arbitration award when it has absolutely no basis for knowing if the unfair labor practice (for which it bears the primary responsibility of resolving), has been presented to or even considered by the arbitration panel (the course sanctioned by *Electronic Reproduction*), or requiring the Board to only defer in situations where it is certain that the unfair labor practice issue was adequately and fairly decided in a manner consistent with the Act (which the additional requisites in *Banyard* seek to assure). We therefore strongly disagree with Judge Kunzig's statement as applied to the circumstances of this particular case that "[t]here is no need to move into the area of *Banyard*." The Board's deferral policy in *Electronic Reproduction* and its application to the present case warrant such a move.

The majority is mindful of the problems of "dual litigation and forum shopping" against which *Electronic Reproduction* was initially raised. The majority does not advocate "game-playing." The majority seeks reliance on the facts of the particular case, not on any presumed "innate ability" of any board (or even any court) to somehow determine the result, irrespective of the facts and the applicable law. The Board's solution, which amounts to an excessive extension of *Spielberg,* is ill-founded.

A direct approach to the problem is available to the Board. If it so desires, it can utilize the *Collyer* case and its own power to decline jurisdiction (*see NLRB v. Plasterer's Union,* 404 U.S. 116, 136–137, 92 S.Ct. 360, 30 L.Ed.2d 312 (1971) and *Carey v. Westinghouse Corp.,* 375 U.S. 261, 270–272, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964)), and withhold its consideration in cases where it is shown that the party initiating the unfair labor practice proceeding has failed to present the unfair labor practice issue or evidence to the arbitrator where such presentation is deemed necessary. By using *Collyer,* the Board's action is not made pursuant to unfounded presumptions as to the basis of the arbitrator's award, but upon a recognition of the propriety of the arbitration process itself. This alternative procedure must, however, only be applied where the *two basic conditions* of *Collyer* have been met: namely (1) the disputed issues are, in fact, issues susceptible to resolution under the operation of the grievance machinery agreed to by the parties, and (2) there is no reason to believe that the use of that machinery by the parties could not or would not resolve such issues in a manner compatible with the purposes of the Act.

[*] The Honorable Robert L. Kunzig, U. S. Court of Claims, Washington, D. C., sitting by designation.

NLRB in *Spielberg Manufacturing Co.,* 112 NLRB 1080 (1955).

In 1955, *Spielberg* came upon the scene and approved deference to arbitration if: (1) The proceedings appear to be fair and regular; (2) all parties had consented to be bound by the arbitrator's decision; and (3) the award was not repugnant to the purposes and policies of the Act. In the instant matter it is conceded by the majority that the *Spielberg* requirements have been met. In addition, the arbitration panel decided in *favor* of *plaintiff,* thus emphasizing that the procedures were fair and regular. (It should be noted that the employer has not objected to the arbitration award.) Thus it is not difficult to hold that here the arbitration board by clear implication passed on the question of whether there was or was not an unfair labor practice committed.

There is no need to move into the area of *Banyard.* To put more requirements on top of *Spielberg* may well make effective use of the arbitration process extremely difficult. In my opinion, the court in *Banyard* could easily have reversed the grievance committee decision by an application of *Spielberg*'s requirement number three. There the arbitration decision was *against plaintiff* and, it appears, repugnant to the purposes of the Act. This makes *Banyard* clearly distinguishable from the instant case. The criteria of *Spielberg* are sufficient to prevent undue deference by the Board to an arbitrator's decision.

I am seriously concerned with the damage *Banyard* can do to the vitally important arbitration process. I would not embrace *Banyard*'s concepts. There exists too much possibility for game playing with judicial processes. A plaintiff can hold back some of his material issues, carefully preserve an important argument, and then (if he loses in arbitration) claim the panel failed specifically to pass on this point and start all over again.

This "second bite at the apple" trick can seriously cripple effective arbitration and review. In my view, *Banyard* aids and abets "second bite" game playing, instead of helping to make it impossible.

In the instant case, three tribunals have already decided and reviewed the issues involved. The arbitration panel held Stephenson improperly discharged and stated that he should return to work. An administrative law judge affirmed and this decision was in turn upheld by the NLRB based on the practice established in *Spielberg*. Now the majority in the Circuit Court would remand for yet another decision.

I am convinced justice has already been served here. I would put more faith in the innate ability of the NLRB, its Boards and law judges to solve this type of problem. The arbitration process is too vital in the effective conduct of labor relations. It should not be weakened nor have its strength diluted. Above all, game playing with judicial processes should at all times be discouraged and prevented. I believe *Banyard* and the decision of the majority in the instant case will lead inevitably to the opposite result.

In summary, the *Spielberg* decision establishes sufficient criteria for determining when the NLRB should or should not defer to an arbitration decision. The *Banyard* decision, on the other hand, by greatly restricting the NLRB's discretion, fosters judicial game playing that will only prolong and complicate the orderly settlement of labor disputes.

Therefore I respectfully dissent and would affirm the decision of the NLRB below.