**AMERICAN TELEPHONE & TELE-GRAPH CO., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

Nos. 522, 1174, Dockets 74–1951, 74–2151.

United States Court of Appeals, Second Circuit.

Argued May 28, 1975.

Decided July 29, 1975.

David A. Leff, New York City (Edward Silver, Proskauer, Rose, Goetz & Mendelsohn, Philip J. Wessel, New York City, of counsel), for petitioner.

Michael S. Winer, Atty., N. L. R. B. (Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, John M. Flynn, Atty., N. L. R. B., Washington, D. C., of counsel), for respondent.

Before CLARK, Associate Justice,* and MANSFIELD and MULLIGAN, Circuit Judges.

* Supreme Court of the United States, retired, sitting by designation.

MANSFIELD, Circuit Judge:

This petition for review and cross-application for enforcement of an order of the National Labor Relations Board ("Board" herein), which is based on a finding that American Telephone and Telegraph Co. ("AT&T" herein) committed an unfair labor practice in violation of § 8(a)(1) of the National Labor Relations Act ("Act" herein), 29 U.S.C. § 158(a)(1), by threatening an employee with disciplinary action because of the rude manner in which she engaged in collective bargaining activities, arises out of a petty incident. Although we have no alternative but to enforce the Board's order, we do so with considerable misgivings regarding its apparent waste of the time and limited resources of itself and of this court upon such a trivial matter when important cases of substance are being delayed and backlogged in the Board's administrative process for months and even for years.

In September 1973, Anne H. Walden, an AT&T overseas operator, was the bargaining representative of Local 1150, Communications Workers of America ("the Union" herein) responsible for the handling of grievances involving AT&T operators in certain New York City areas. In the course of negotiations with AT&T with respect to grievances arising out of its closing of an operating district, Walden requested certain data from William R. Beckett, AT&T District Operations Supervisor, relating to employees' part-time hours in the New York Overseas Division, which Beckett agreed to furnish. After receiving a paper purporting to set forth the requested data, Walden experienced difficulty understanding it.

Without notice to Beckett,[1] Walden on September 17, 1973, went to his office, which consisted of a partially-enclosed doorless cubicle located on a floor occupied by other employees, and upon eliciting from Walden that the paper was his response to her earlier request, proceeded in a loud voice to harangue and shout at Beckett referring to the "garbage" which he had sent her, making derogatory remarks about Beckett's intelligence and advising him that she was not there to "play games." Thereupon she abruptly left without informing him as to what clarification she desired with respect to the information already furnished or what further information she needed. The incident, which lasted three to five minutes, distracted approximately 10 other employees in the area, some of whom were working on exacting matters that required precision. One employee who commented, "There she goes again," later testified that he was referring to a previous occasion when Walden, in dealing with him, spoke so loudly that he was forced to request her to lower her voice or else he would have no further dealings with her.

A few hours after the incident on September 17, 1973, Beckett informed Walden that because of her abusive behavior he was issuing to her a disciplinary warning, which he did. The warning was placed in her company personnel file. Walden countered by filing with the Board a charge that the action taken by Beckett constituted an unfair labor practice.

Despite the relative inconsequentiality of the claim the Board, after investigation, issued a complaint and notice of hearing.[2] Whether the Board had facilities for disposing of the matter short of invoking full-scale Board procedures and, if so, whether it sought to do so in this

1. Where clarifying information was desired the practice, at least on several prior occasions, had been to confer informally and without notice.

2. The Board, of course, is vested with the power to proceed with such trivial matters, if it

wishes, and issue a remedial order. *Truck Drivers Local No. 705 v. NLRB,* 509 F.2d 425, 428 (D.C.Cir.1974); see *NLRB v. Long Island Airport Limousine Service Corp.,* 468 F.2d 292, 296 (2d Cir. 1972).

case we do not know.[3] In any event, a hearing was held at which several witnesses, including Walden, Beckett and some of the employees who overheard the incident, testified and exhibits were introduced. The Administrative Law Judge filed a decision finding that Walden's conduct exceeded the limits permitted her when engaged in Union business and characterizing the grievance leading to her outburst as "a peripheral procedural matter totally devoid of substance," which did not justify her "gratuitous conduct." He recommended that the complaint be dismissed in its entirety. His recommendation was rejected by the Board which, in a decision published on June 20, 1974, concluded that although Walden's conduct had been "rude" and "less than genteel" it was "not so opprobrious as to be unprotected" and that AT&T's conduct in threatening her with discipline constituted an unfair labor practice in violation of § 8(a)(1) of the Act.

The Board issued an order directing AT&T to desist from threatening employees with severe discipline because they engage in protected activities for the purpose of collective bargaining or in any manner restraining or coercing its employees in the exercise of rights protected by § 7 of the Act, 29 U.S.C. § 157.[4] The Board further ordered AT&T to expunge from Walden's personnel file the warning issued to her on September 17, 1973, and to post at its place of business in New York City a notice to its employees that it will not threaten or coerce them in the exercise of their § 7 rights and will expunge from Walden's personnel file the warning issued to her on September 17, 1973.

## DISCUSSION

▮ In reviewing the Board's decision and order we are governed by settled principles. An employee is protected by § 7 in her good faith, albeit impulsive, conduct as a Union representative in carrying out the terms of a collective bargaining agreement with her employer, see *NLRB v. Interboro Contractors, Inc.,* 388 F.2d 495, 499–501 (2d Cir. 1967). A certain amount of salty language or defiance will be tolerated in bargaining sessions with respect to grievances, in recognition of the fact that the sessions are usually held behind closed doors and "that passions run high in labor disputes and that epithets and accusations are commonplace," *Crown Central Petroleum Corp. v. NLRB,* 430 F.2d 724, 731 (5th Cir. 1970). However, if the employee's conduct becomes so flagrant that it threatens the employer's ability to maintain order and respect in the conduct of his business, it will not be protected. *NLRB v. Thor Power ·Tool Co.,* 351 F.2d 584 (7th Cir. 1965). The responsibility for applying this balancing test, depending as it does so heavily on the facts in a particular case, rests with the Board, whose decision, if supported by substantial evidence, will not be disturbed unless it is arbitrary or illogical.

▮ Applying these standards here, we would readily have accepted the Administrative Law Judge's sensible characterization of the subject of Walden's conduct as "a peripheral procedural matter totally devoid of substance," not entitling her to protection for the rudeness which she displayed. This was not a closed grievance committee meeting where participants, engaging behind closed doors in a frank discussion of dif-

---

3. Upon oral argument counsel advised that at the outset AT&T made an offer of settlement under which AT&T and Walden would renew their contractual obligations of mutual respect, AT&T would expunge the disciplinary warning from Walden's personnel file, and Walden would withdraw her charges. Walden apparently rejected this offer. Nevertheless the Board continued to press the proceeding.

4. Section 7 of the National Labor Relations Act provides in pertinent part:

"Employees shall have the right to . . bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ." 29 U.S.C. § 157.

ferences, might be expected to exhaust some steam without adversely affecting the employer's conduct of its business, see, e. g., *Crown Central Petroleum Corp. v. NLRB, supra.* However, assuming that Board action was warranted in this miniscule matter, the Board had the power to reject the Administrative Law Judge's findings even though not clearly erroneous, *NLRB v. Interboro Contractors, Inc., supra,* 388 F.2d at 499. The Board's contrary conclusions, being supported by substantial evidence, are entitled to respect, see *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 494–96, 71 S.Ct. 456, 95 L.Ed. 456 (1951), and we cannot say that they are capricious or illogical. Accordingly, unnecessary and wasteful as the entire Board proceedings appear to have been, the Board's order will be enforced.