**HAWAIIAN HAULING SERVICE, LTD., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 75–2827.

United States Court of Appeals, Ninth Circuit.

Nov. 12, 1976.

Rehearing En Banc Denied Dec. 30, 1976.

Jared Jossem (argued), of Torkildson, Katz & Conahan, Honolulu, Hawaii, for petitioner.

Richard Bader, Atty. (argued), N.L.R.B., Washington, D. C., for respondent.

Before HUFSTEDLER and WRIGHT, Circuit Judges, and VAN PELT,* District Judge.

HUFSTEDLER, Circuit Judge:

This appeal presents the question of the proper scope of our review of a National Labor Relations Board ("NLRB") decision [1] refusing to defer to an arbitration award. We conclude that the Board acted within its discretion in refusing to follow the arbitrator's award in this case.

The controversy arises from the discharge of Richardson, an employee of Hawaiian Hauling Service, Ltd., ("HHS"), when Richardson called HHS's general manager a liar at a grievance meeting. Before this incident, Richardson had been employed by HHS for 22 years and had served as a Teamsters Union Shop Steward for 14 years. HHS gave Richardson two warning letters in October, 1973. The first concerned a protracted leave of absence. The second concerned a charge that Richardson had displayed pornographic photographs on his desk in January, 1972, and May, 1973, which were said to have been discovered and ordered removed on October 3, 1973, by Rogers, HHS's vice president and general manager. On October 15, 1973, Richardson and the union business agent met with Rogers and Richardson's immediate supervisor concerning the warning letters. Richardson contended that Rogers had been aware of the pictures and had condoned the display and that therefore the second warning letter should be rescinded. Rogers denied this, and Richardson called Rogers a liar. Rogers discharged him on the spot, admittedly on account of Richardson's accusation.[2]

The union grieved the discharge to arbitration, contending that Richardson's conduct at the meeting was protected activity within the meaning of 29 U.S.C. § 157. The arbitrator issued an unexplained award in which he ruled that "the discharge in question was proper."[3] The Administrative Law Judge deferred to the award, the NLRB overturned that ruling by a divided vote, and HHS now petitions to deny enforcement.

NLRB deference to an arbitration award is now an integral part of the administration of federal labor law, but Board deference is nonetheless discretionary. As the Court noted in *NLRB v. Plasterers' Union*:

"  .  .  .  [W]here challenged conduct poses an arbitrable dispute under a collective-bargaining contract but is also an unfair labor practice within the jurisdiction of the Board, the Board will, as a matter of policy, defer to the arbitral settlement, although it is not bound to do so by the LMRA. Although the Board is not statutorily required to honor arbitration awards in such situations, it often defers to them if the arbitrator has con-

---

* Honorable Robert Van Pelt, Senior United States District Judge, District of Nebraska, sitting by designation.

1. 219 NLRB No. 126, 1974–75 CCH NLRB Decisions ¶ 16,065 (July 30, 1975).

2. *Id.* at 2–3 & n.2.

3. The parties stipulated that the award would only contain the arbitrator's conclusions, that the award would not comment on any of the evidence, and that no transcript would be made of the hearing. This hearing was held prior to the Board's decision in *Electronic Reproduction Service Corp.*, 213 NLRB 758, 1974–75 CCH NLRB Decisions ¶ 15,046 (1974), in which the Board changed its practice of refusing to defer to an award which gave no indication that the arbitrator actually ruled on the unfair labor practice issue. In *Electronic Reproduction* the NLRB acknowledged that most arbitration hearings are unrecorded and concluded that a decision whether or not a discharge was for "just cause" necessarily decides the statutory issue of discriminatory discharge. The decision was based upon a disapproval of the prior practice of withholding evidence in grievance proceedings for presentation before the Board.

Because of our decision that NLRB refusal to defer was proper under the standards of *Spielberg Mfg. Co.* (1955) 112 NLRB 1080, we need not decide whether the Board must apply *Electronic Reproduction* to arbitration hearings conducted before the date of that decision and express no opinion on the merits of such application. Nor do we have to decide whether the *Electronic Reproduction* standard is valid. See *Banyard v. NLRB* (D.C.Cir.1974), 164 U.S.App. D.C. 235, 505 F.2d 342, 347–49 where the lack of an adequate written explanation for an award was held to require nondeferral.

sidered the alleged unfair labor practice." ((1971) 404 U.S. 116, 136–37, 92 S.Ct. 360, 372, 30 L.Ed.2d 312 (citations omitted). *See also* 29 U.S.C. § 160(a).)

Upon review in this court the question is therefore whether the NLRB abused its discretion in reaching its deferral decision.[4] (*Machinists Local 1309 v. NLRB* (9th Cir. 1976) 530 F.2d 849; *Local 700, Machinists Union v. NLRB* (2d Cir. 1975) 525 F.2d 237, 244; *NLRB v. Longshoremen's Union Local 27* (9th Cir. 1975) 514 F.2d 481, 483; *Provision House Workers Union Local 274 v. NLRB* (9th Cir. 1974) 493 F.2d 1249; *Associated Press v. NLRB* (1974) 160 U.S.App.D.C. 396, 492 F.2d 662, 666; *NLRB v. Horn & Hardart Co.* (2d Cir. 1971) 439 F.2d 674, 679; *NLRB v. Auburn Rubber Co., Inc.* (10th Cir. 1967) 384 F.2d 1, 3.) The Board has established criteria to guide its decision and to this extent self-imposed restraints limit its discretion.[5] In reviewing the Board, we must insure that it adheres to its own standards until they are properly changed by the Board. We will not deny enforcement unless the Board clearly departs from its own standards [6] or its standards are themselves invalid. (*Ban-*

yard v. NLRB* (D.C.Cir.1974) 164 U.S.App. D.C. 235, 505 F.2d 342, 347; *Provision House Workers, supra,* at 1249; *Horn & Hardart, supra,* at 679; *Auburn Rubber, supra,* at 3.)

The decision of the majority of the Board in this case squarely relied on the *Spielberg* criterion that deferral will be rejected if the arbitral award is repugnant to the purposes and policies of the National Labor Relations Act ("Act"). The majority of the Board thought that the effect of the award "substantially dilute[d] an employee's right to fully present his case during grievance and arbitration proceedings" (219 NLRB No. 126, at 3) by upholding a discharge of an employee who used the epithet "liar" during the grievance proceeding. The Board did not abuse its wide discretion in thus characterizing the effect of the arbitral decision and in refusing to defer to the award.[7] The Board's decision was well within the rationale of *Crown Central Petroleum Corp. v. NLRB* (5th Cir. 1970) 430 F.2d 724. As the *Crown* court appropriately observed, grievance meetings often generate high emotions. Shouting and profanity are common and are protected activities in this setting.[8] Petitioner argues that

---

4. An NLRB decision can also be attacked on the basis that the decision, upon review of the record as a whole, was not supported by substantial evidence. *Universal Camera Corp. v. NLRB* (1951) 340 U.S. 474, 488, 492–96, 71 S.Ct. 456, 95 L.Ed. 456. However, that issue is also not before us as HHS argues only that the Board made errors of law in applying 29 U.S.C. §§ 158(a)(1), (b)(3), and that the Board's deferral decision was an abuse of discretion.

5. *E. g.,* Spielberg Mfg. Co. (1955) 112 NLRB 1080; *International Harvester Co.* (1962) 138 NLRB 923; *Collyer Insulated Wire* (1971) 192 NLRB 837; *Electronic Reproduction Service Corp.* (1974) 213 NLRB 758. *See* Note, "The NLRB and Deference to Arbitration," (1968) 77 Yale L.J. 1191 for a survey of pre–1968 NLRB deferral practice.

6. "We do not suggest that the Board can announce a policy regarding deference to arbitration and then blithely ignore it, thereby leading astray litigants who depend upon it. But it can change its mind or alter its standards for deference in some respects without necessarily engaging in conduct so blameworthy as to justify our calling it abuse of discretion" (*Horn & Hardart, supra,* 439 F.2d at 679.)

7. We are not free to substitute our judgment for the Board's even if, as Board members, we might have thought that the minority members' views were more persuasive. *Cf. NLRB v. Truck Drivers Union* (1957) 353 U.S. 87, 96–97, 77 S.Ct. 643, 1 L.Ed.2d 676. *See generally,* Winter, "Judicial Review of Agency Decisions: The Labor Board and the Court," 1968 Sup.Ct. Rev. 53.

8. "Neither do we think the language ["damn lies" "these . . . damn lies" *Crown Petroleum,* 430 F.2d at 726 n.3] used by [the discharged employees] was so opprobrious as to carry them 'beyond the pale' of the Act's protection. It has been repeatedly observed that passions run high in labor disputes and that epithets and accusations are commonplace. Grievance meetings arising out of disputes between employer and employee are not calculated to create an aura of total peace and tranquility where compliments are lavishly exchanged. Adding our disclaimer to that of the Board, we do not condone the conduct of [the employees] in the meeting, but we do not feel that the interests of collective bargaining will be served by the external imposition of a rigid standard of proper and civilized behavior." *Id.* at 731.

Richardson's epithet was itself a deliberate falsehood and thus not protected activity. This argument, however, misses the mark [9] for as the Board noted, "[w]hen Rogers asserted that he had not seen the material on Richardson's desk, Richardson could only meaningfully pursue the grievance" by showing that Rogers' version was false. (219 NLRB No. 126, at 4–5). Because a large number of grievances turn on credibility, we think the Board was within its discretion when it viewed the dispute from the perspective of the possible chill on pursuing grievances and extended the *Crown* rationale to cover the facts before us.

ENFORCEMENT GRANTED.

WRIGHT, Circuit Judge (dissenting).

I respectfully dissent.

The controlling issue here is whether Richardson's conduct at the October 15 meeting was protected activity. While impulsive behavior may be protected during grievance proceedings, *N.L.R.B. v. Thor Power Tool Co.*, 351 F.2d 584, 587 (7th Cir. 1965); *Crown Central Petroleum Corp. v. N.L.R.B.*, 430 F.2d 724, 730 (5th Cir. 1970), deliberate falsehoods are not. *Owens-Corning Fiberglas Corp. v. N.L.R.B.*, 407 F.2d 1357, 1365 (4th Cir. 1969); *Letter Carriers v. Austin*, 418 U.S. 264, 277–78, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974). The inquiry is thus whether Richardson's conduct was such as to cross the line of protected grievance activity.

In submitting the grievance to arbitration, the parties stipulated that the arbitra-

tor's decision would contain only his conclusions, and that a formal transcript would not be made of the testimony and arguments presented there. The award upholding Richardson's termination was made in accordance with the grievance arbitration proceeding established by contract of the parties.

Arbitration enjoys a preferred position in labor law. Congress has declared that "[f]inal adjustment by a method agreed upon by the parties is . . . the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." 29 U.S.C. § 173(d) (1970). The Supreme Court has viewed arbitration as serving the national interest by offering an alternative to economic coercion.[1]

Although it is clear that the NLRB need not automatically defer to the arbitrator's decision, *N.L.R.B. v. Acme Industrial Co.*, 385 U.S. 432, 437 87 S.Ct. 565, 17 L.Ed.2d 495 (1967), it attempts to do so as a matter of policy. *N.L.R.B. v. Plasterers' Union*, 404 U.S. 116, 136–37, 92 S.Ct. 360, 30 L.Ed.2d 312 (1971); *William E. Arnold Co. v. Carpenters*, 417 U.S. 12, 16–17, 94 S.Ct. 2069, 40 L.Ed.2d 620 (1974).

The Board made its first major statement on deference to arbitration in *Spielberg Mfg. Co.*, 112 NLRB 1080 (1955), where it said that it would not reconsider arbitrators' awards on their merits if the proceedings appeared to be fair and regular, all parties had agreed to be bound, and the decision of the arbitration panel was not

See also, *American Telephone & Telegraph Co. v. NLRB* (2d Cir. 1975) 521 F.2d 1159, 1161–62 ("A certain amount of salty language or defiance will be tolerated . . . [in] a closed grievance committee meeting where participants, engaging behind closed doors in a frank discussion of differences, might be expected to exhaust some steam without adversely affecting the employer's conduct of its business").

9. The authorities cited by petitioner are inapt because they do not involve activities during the course of the grievance procedure. Unlike representation campaigns and contract negotiations, grievance procedures are analogous to litigation.

1. *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). As one commentator has noted: "[T]he Supreme Court in 1960 recognized both a broad scope of interpretation and a narrow scope of judicial review for the arbitrator's award. . . . [T]he Court deferred to the arbitration process because it was the method chosen by the parties and because the arbitrator was considered to be most familiar with the functions of the collective bargaining agreement, the operation of the plant, and past practices in the parties' bargaining relationship." Note, 51 Wash.L.Rev. 470, 481 (1976).

clearly repugnant to the purposes and policies of the Labor Management Relations Act (LMRA). *Id.* at 1082.

In *International Harvester Co.*, 138 N.L. R.B. 923, enforced *sub nom. Ramsey v. N.L. R.B.*, 327 F.2d 784 (7th Cir. 1964), the Board varied the language of the test, stating that it would not adjudicate an unfair labor practice claim which arose from the same facts as an arbitrated dispute "unless it clearly appears that the arbitration proceedings were tainted by fraud, collusion, unfairness, or serious procedural irregularities or that the award was clearly repugnant to the purposes and policies of the Act." 138 NLRB at 927.[2]

This test was cited approvingly in *Carey v. Westinghouse Electric Corp.*, 375 U.S. 261, 271, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964), where the Court compelled an employer to arbitrate even though the Board alone could render a decision binding on the employer and two rival unions.

Under either test, the arbitrator's award in this case should have been upheld. There was no claim that the proceedings were not fair and regular. Rather, the Board held that Richardson's activity was protected and that, by precluding a union from calling the credibility of management witnesses into question, the arbitrator had interfered with the effectiveness of the grievance and arbitration mechanism. Thus, said the Board, the award was clearly repugnant to the policies of the Act. In reversing the arbitrator's award, however, the Board substituted its factual judgment for the arbitrator's in deciding the motivation behind Richardson's conduct.

The Board should defer to the arbitrator's judgment on questions of fact and credibility. *Cf. Electronic Reproduction Service Corp.*, 213 NLRB No. 110 (1974).

The fact that the Board has held that it will not consider deferring to an award unless the unfair labor practice issue was both presented to and considered by the arbitrator[3] does not change the result here.

The parties here stipulated that all relevant issues were properly before the arbitrator. Because the Board was not confronted with differing applicable contractual and statutory standards, the brevity of the arbitral award did not force it to speculate as to the standard applied by the arbitrator. Both the applicable standard as developed by case law and the relevant issues were ably briefed by the parties and presented to the arbitrator for consideration.

The test is not what the written decision contains, but what the arbitrator considered. *Superior Motor Transportation Co., Inc.*, 200 NLRB No. 139 (1972); *Terminal Transport Co.*, 185 NLRB 672 (1970).

The arbitrator's decision meets the standards for deferral. It is not clearly repugnant to the purposes and policies of the LMRA and it is implicit in the decision that the arbitrator considered all relevant issues presented to him.

The decision of the Board should be denied enforcement.

---

2. At least one commentator has viewed this as a drastic extension, rather than a variance of the *Spielberg* doctrine. *See* Note, 77 Yale L.J. 1191, 1192 (1968).

3. *John Klann Moving & Trucking Co.*, 170 NLRB 1207, enf'd 411 F.2d 261 (6th Cir.), *cert. denied,* 396 U.S. 833, 90 S.Ct. 88, 24 L.Ed.2d 84 (1969). *Accord, Banyard v. NLRB,* 164 U.S. App.D.C. 235, 505 F.2d 342 (1974).