**DISTRICT 1199E, NATIONAL UNION OF HOSPITAL AND HEALTH CARE EMPLOYEES, RETAIL, WHOLESALE AND DEPARTMENT STORE UNION, AFL–CIO, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 78–1954.

United States Court of Appeals, District of Columbia Circuit.

Argued June 11, 1979.

Decided Dec. 18, 1979.

Bernard W. Rubenstein, Baltimore, Md., for petitioner.

Lawrence E. Blatnik, Atty., N. L. R. B., Washington, D. C., with whom John S. Irving, Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel and Allison W. Brown, Jr., Atty., N. L. R. B., Washington, D. C., were on brief, for respondent.

Before LEVENTHAL and WILKEY, Circuit Judges and OBERDORFER,* District Judge, United States District Court for the District of Columbia.

Opinion for the Court filed by District Judge OBERDORFER.

OBERDORFER, District Judge.

District 1199E of the National Union of Hospital and Health Care Employees *et al.* ("Union") petitions to review and set aside a ruling by the National Labor Relations Board ("NLRB"). The Board held that the Union violated § 8(b)(3) of the National Labor Relations Act, 29 U.S.C. § 158(b)(3) (1976), by unlawfully refusing to bargain collectively with Olympic Management Services, Inc. ("Olympic") on behalf of seventeen former employees of Greater Pennsylvania Nursing Center, Inc. ("Greater Pennsylvania"). Pursuant to a service contract entered into between Olympic and Greater Pennsylvania, the former Greater Pennsylvania employees were performing services at the same Baltimore nursing home at which they had worked before they became employees of Olympic. The Union justified its refusal to bargain collectively with Olympic on the ground that an Arbitrator had determined that a collective bargaining agreement between the Union and Greater Pennsylvania barred the latter from contracting out these employees' services to Olympic and had ruled that the Union was entitled to continue in effect its collective bargaining agreement with Greater Pennsylvania. We find that the NLRB did not give adequate consideration to the Union's defense based on the collective bargaining agreement and the Arbitrator's interpretation of it, and therefore remand the case to the Board.

## I

This dispute grows out of an October 22, 1976, transaction between Greater Pennsylvania and Olympic by which Greater Pennsylvania contracted out to Olympic certain dietary, housekeeping and laundry services previously performed by Greater Pennsylvania's own employees. On October 19

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

(three days earlier) Greater Pennsylvania had notified the Union which represented all Greater Pennsylvania employees that it intended to contract out to Olympic. Thereafter, representatives of the Union, Greater Pennsylvania and Olympic discussed the contracting out. Despite these negotiations, the parties were unable to reach any agreement about the Union representation of the Greater Pennsylvania employees transferring to Olympic.[1]

At the time of the contracting out Greater Pennsylvania and the Union were parties to a Labor Relations Agreement which established the terms and conditions for the employees working at Greater Pennsylvania. Section 3.1 of that agreement retained "[a]ll management functions and responsibilities in Greater Pennsylvania" and provided that none of these functions "shall be exercised in an unreasonable manner." App. 180.

The Greater Pennsylvania/Olympic contract of October 22, 1976 specifically recognized "the existence of a collective bargaining agreement affecting the present employees of the housekeeping, laundry and dietary departments." Olympic agreed "that it shall do nothing that shall subject the company [Greater Pennsylvania] to damage and/or complaints arising out of said company's lawful obligations relating to the collective bargaining agreement." Olympic further agreed "to give first preference to Greater Pennsylvania employees in the affected departments." Finally, the agreement recited "the intent of the parties that no above-mentioned employee accepting employment with [Olympic] shall be suffered to lose seniority, salary or benefits as a result of the change of employer."[2]

The Union took the position in the 1976 negotiations that it would not bargain with Olympic after the contracting out unless Olympic carried over by its terms the collective bargaining agreement between the Union and Greater Pennsylvania. Olympic refused to recognize the Union on this basis. In January, 1977, negotiations failed and the Union invoked the arbitration clause of the collective bargaining agreement. A few days later, Olympic filed with the NLRB the unfair labor practice charge that is the subject of the petition here.

### A.

An Arbitrator, selected by Greater Pennsylvania and the Union, held a hearing on April 1, 1977; he afforded both sides an opportunity to present evidence and received their briefs.

On June 6, 1977, the Arbitrator announced an award for the Union.[3] At the outset the Arbitrator explained his earlier refusal to defer consideration of the dispute before him as requested by Greater Pennsylvania in deference to prospective NLRB resolution of the unfair labor practice charge. The Arbitrator took the view that "this case is capable of settling all the issues between the parties without the delay inherent in waiting for an NLRB decision."

The question before the Arbitrator on the merits was whether Greater Pennsylvania "violated its collective bargaining agreement" with the Union "by subcontracting its housekeeping, dietary and laundry operations" to Olympic. App. 176. The Arbitrator focused upon the section of the collective bargaining agreement which vested management functions in the employer and provided that: "None of the above shall be exercised in an unreasonable manner." App. 180.[4] Finding "no evidence of sub-

---

1. Approximately thirty-three nursing staff employees remained on the Greater Pennsylvania payroll, their status unaffected by the contracting out.

2. Management Services Contract, October 22, 1976, App. 140–46.

3. The award made no specific reference to any obligation of the Union to bargain with Olympic or to continue the terms of the collective

bargaining agreement in effect, pending further bargaining.

4. The employer had argued to the Arbitrator that it had satisfied its duty to manage reasonably when it offered to "meet with the Union and discuss Olympic's takeover of the dietary, laundry and housekeeping services." The Union countered that removal of a substantial

stantial business justification in this case," the Arbitrator rejected Olympic's contention that it acted reasonably "by hiring the old employees and offering to negotiate a new contract with the Union." The Arbitrator noted that "the question is not whether Olympic implemented the contract in a reasonable manner," but whether Great Pennsylvania "acted reasonably in subcontracting." The Arbitrator concluded that "[s]ince no substantial business justification was shown, I find the employer acted unreasonably."[5] On this basis the Arbitrator ruled in the award that Greater Pennsylvania "violated its collective bargaining agreement by subcontracting laundry, dietary and housekeeping services to Olympic . . . ." The Arbitrator directed Greater Pennsylvania "to put into effect immediately . . . all the terms of its collective bargaining agreement."

### B.

Meanwhile, the unfair labor charge against the Union was heard by an Administrative Law Judge ("ALJ") on May 2, 1977, decided by him on April 7, 1978 (10 months after the Arbitrator's award of June 6) and affirmed by the Board on September 7, 1978.

The ALJ, like the Arbitrator, received evidence and briefs; he made a more detailed exposition of the circumstances. These findings focused on the transaction between Greater Pennsylvania and Olympic, testing whether it was a sham. The ALJ treated the Arbitrator's award as an abstract holding. Indeed, the ALJ's findings made no specific mention of the Arbitrator's ruling that the employer had violated its collective bargaining agreement by subcontracting. According to the ALJ, the Arbitrator recognized that the agreement does not expressly limit subcontracting and that the right to subcontract "depends upon reasonableness established by substantial business justification." Proceeding from this conclusion, the ALJ read the Arbitrator's ruling as holding that the subcontracting was unreasonable because Greater Pennsylvania had not given any reason or "strong business necessity" for the subcontract. On the basis of this analysis of the Arbitrator's award, the ALJ decided not to defer to it because:

(1) Olympic was not a party to the arbitration;

(2) the unfair labor practice (the Union's refusal to bargain with Olympic) was not considered by the Arbitrator; and

(3) the Arbitrator's decision (as perceived by the ALJ) was at variance with the doctrine of *Fiberboard Paper Products Corp. v. NLRB,* 379 U.S. 203 [85 S.Ct. 398, 13 L.Ed.2d 233] (1964), which states that there is no statutory bar to subcontracting so long as the employer

---

number of Union-represented employees from the agreement "is unreasonable in the absence of a showing of strong business necessity."

**5.** Although the parties did not argue remedy, the Arbitrator concluded that he had the authority and the duty to remedy any violation fully argued before him. Accordingly, he ruled that:

The employer must comply with the Agreement. They may continue to utilize Olympic in a managerial capacity if they desire, but the members of the unit are employees of [Greater Pennsylvania] and entitled to the full benefit of the Agreement.

The award itself, issued June 6, 1977, held that:

The employer violated its Collective Bargaining Agreement by subcontracting laundry, dietary and housekeeping services to Olympic Management Services, Inc.

The Employer is directed to put into effect immediately as concerns these services all the terms of its Collective Bargaining Agreement.

The Arbitrator invited negotiation and, if necessary, further briefs and argument with respect to retroactive application of his award.

Nothing in the award precludes future negotiation between Greater Pennsylvania and the Union to amend their collective bargaining agreement in the manner proposed by Olympic to the Union.

On October 19, 1977, the Arbitrator also denied Greater Pennsylvania's request that any further action be stayed pending disposition of the case then pending before the Board because neither the Arbitrator nor the parties had received any such request from the Board and because "under established Board law the NLRB may well defer to the Award." App. 189.

notifies employees and negotiates with them about the contract. According to the ALJ, *Fiberboard* imposed no duty on the employee to "convince the union or anyone else that the subcontracting is reasonable." App. 202.

Having disposed of deferral on the authority of *Fiberboard,* the ALJ invoked the same premise to find the Union refusal to bargain to be unlawful. "Greater Pennsylvania did more than meet the bare requirements derived from *Fiberboard,*" he said. App. 203. According to the ALJ Olympic's partial recognition of the Greater Pennsylvania employees more than satisfied its successorship obligations. Viewed in this light, the ALJ found that the Union's refusal to negotiate with Olympic to change the collective bargaining agreement was an unwarranted attempt "to impose on the successor employer, without bargaining, the obligations of the predecessor's collective bargaining contract." Having so decided, the ALJ directed the Union to bargain with Olympic. The Board approved.

## II

### A.

Petitioner urges here that the Board "decided this matter as if no collective bargaining agreement was in existence." According to petitioner, the Arbitrator found that the subcontract violated the collective bargaining agreement and that the Board did not decide to the contrary. This, petitioner urges, "automatically relieved the union of the duty of bargaining a new contract with Olympic." Br. for Petitioner at 6. According to the petitioner, "it appears inconceivable that [it] could violate the Act by seeking an arbitrable determination of an alleged contract violation and agreeing to live up to the arbitrator's award." Furthermore, petitioner argues, the Board has no authority to administer and enforce collective bargaining agreements; in fact, the ALJ did not construe this one. It was not in the record before him. Rather, petitioner contends that the ALJ treated the contract issue as "immaterial." Br. for Petitioner at 8.

Finally, the petitioner urges that *Fiberboard's* requirement for notice and negotiation before subcontracting does not relieve an employer from any prior agreement it may have made not to subcontract. Since the Arbitrator found that the contracting out violated the collective bargaining agreement, and the ALJ and the Board acted as if there were no such agreement, petitioner contends that the award is a complete defense for the Union's refusal to deal with Olympic.

### B.

The Board responds by reiterating the ALJ's rationale that the decision not to defer to the Arbitrator and to require the Union to bargain with Olympic was no abuse of discretion for several reasons:

(1) Olympic was not a party to the collective bargaining agreement or to the arbitration:

(2) the arbitration award did not justify deferral because it did not resolve the unfair labor practice—the refusal to bargain; and

(3) deferral would be inconsistent with the policies of the Act as articulated in *Fiberboard.*

At the same time, the Board argues that its decision is not inconsistent with the arbitration award because the Union has yet to attempt to enforce that award by suing Greater Pennsylvania. Until the Union sues to enforce the award, the Board's action protects the former Greater Pennsylvania employees who were, in effect, transferred to Olympic by the subcontract. And, if the award should be affirmed and enforced, the Board, in effect, represents that at that time it might defer.

### III

### A.

Our earlier decisions, generally embracing positions staked out by the Board, have established broad principles that govern the ultimate decision of this case. The Board has, with the approval of this and other

circuit courts, frequently chosen not to exercise its statutory jurisdiction over unfair labor practice complaints in deference to grievance and arbitration proceedings.[6] In exercising this discretion the Board has undertaken (and has been encouraged to undertake) to strike a balance between "the statutory policy favoring the fullest use of collective bargaining and arbitral process, and . . . the statutory policy reflected by Congress' grant to the Board of exclusive jurisdiction to prevent unfair labor practices." *E. g., Spielberg v. NLRB,* 192 NLRB at 841, *cited with approval in Local Union No. 715 v. NLRB,* 161 U.S.App. at 219, 494 F.2d at 1138.[7]

■ In exercising its discretion to accept an Arbitrator's award as, in effect, the law of a case, the Board must satisfy itself that the arbitration was

> (1) fair and regular . . . (2) [that the] parties agreed to be bound by the arbitral award, and (3) [and that the award is a] decision which is "not clearly repugnant to the purposes and policies of the Labor Relations Act." [8]

In addition, a decision to defer requires the Board to satisfy itself that the Arbitrator

> (A) clearly decided the issue on which it is later urged that the Board should give deference, and (B) . . . decided an issue within its competence.[9]

Particular Board decisions to defer have won approval in our circuit because:

> ". . . [S]ubmission to grievance and arbitration proceedings of disputes which might involve unfair labor prac-

tices would be substantially discouraged if the disputants thought the Board would give *de novo* consideration to the issue which the arbitrator might resolve." [10]

### · B.

If the question before us were whether the Board has discretion to defer to the arbitration award here, this would be an easy case. There is no contention that the proceedings before the Arbitrator were unfair or irregular. There is no claim that Greater Pennsylvania and the Union were not bound by the award declaring the subcontracting to be illegal and requiring Greater Pennsylvania to honor the collective bargaining agreement with respect to the seventeen employees whose jobs were contracted out to Olympic. Nor is there any suggestion that the Arbitrator condoned illegal or immoral conduct. *Compare Banyard v. NLRB, supra.*

We would probably have approved NLRB deference to the award because Greater Pennsylvania and Olympic were completely in privity by operation of the November, 1976 subcontract. Greater Pennsylvania "fully and adequately defended" Olympic's position in the arbitration. *See Associated Press v. NLRB,* 160 U.S.App.D.C. at 398 n. 1, 491 F.2d at 664 n. 1. The Arbitrator's award is, presumably, legally enforceable against Greater Pennsylvania on motion of the Union.

Nor is there any serious contention that the Arbitrator decided an issue beyond his competence. He interpreted the collective

---

6. *Carey v. Westinghouse Electric Corp.,* 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1963); *NLRB v. Acme Industrial Co.,* 385 U.S. 432, 87 S.Ct. 565, 17 L.Ed.2d 495 (1967); *Associated Press v. NLRB,* 160 U.S.App.D.C. 396, 492 F.2d 662 (1974); *Local Union 2188, Int'l. Brotherhood of Electrical Workers v. NLRB,* 161 U.S. App.D.C. 168, 494 F.2d 1087 (1974), *cert. denied* 419 U.S. 835, 95 S.Ct. 61, 42 L.Ed.2d 61; *Local Union 715, Int'l. Brotherhood of Electrical Workers v. NLRB,* 161 U.S.App.D.C. 217, 494 F.2d 1136 (1974); *Hawaiian Hauling Service, Ltd. v. NLRB,* 545 F.2d 674 (9th Cir. 1976), *cert. denied,* 431 U.S. 965, 97 S.Ct. 2921, 53 L.Ed.2d 1061.

7. Section 203(d) of the Labor-Management Relations Act, 29 U.S.C. § 173(d), states in part:

> Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement.

8. *Banyard v. NLRB,* 164 U.S.App.D.C. 235, 239, 505 F.2d 342, 346 (1974).

9. *Id.* at 240, 505 F.2d at 347.

10. *Associated Press v. NLRB,* 160 U.S.App.D.C. 396, 401, 492 F.2d 662, 667 (1974).

bargaining agreement and determined on application of the Union that Greater Pennsylvania's subcontract with Olympic "violated that agreement." As the Board itself observed in one of its previous decisions in a related context about deferral to arbitration:

> The contract [collective bargaining agreement] and its meaning in present circumstances lie at the center of this dispute . . . . That threshold determination is clearly within the expertise of a mutually agreed-upon arbitrator . . . [T]he dispute between the parties is the very stuff of labor contract arbitration.[11]

Finally, there is no basis for any contention that the Arbitrator's award ". . . rest[s] on grounds that are at variance with, [or] repugnant to," the principle of *Fiberboard*. *Fiberboard* established that subcontracting does not violate the Act, so long as the employer first notifies the affected union and offers to bargain about the subcontract. *Fiberboard* is unlike the case before us in that there was no suggestion there that the contracting out violated any collective bargaining agreement. Neither the Board nor the courts in *Fiberboard* had any occasion to confront the question lurking here: whether a union, which has bargained from one employer an agreement that it would not contract out, loses the rights inherent in such an agreement whenever the employer elects, so long as the employer notifies the union and negotiates before subcontracting. As explained below, *Fiberboard* would not have precluded deferral; it did not involve a contractual agreement not to subcontract out.

## IV

In this case, nevertheless, the ALJ decided not to defer and the Board approved the decision not to defer. The ALJ's decision, as approved by the Board, presents a puzzle which should be resolved before we come to grips with the merits. The result below is clear enough: the Board held that the Union's refusal to bargain with Olympic was an unfair labor practice. Part of the Board's rationale is also clear enough: Greater Pennsylvania's contracting out transaction was valid because the employer complied with the "bare requirements" of *Fiberboard* when it notified the Union of the proposed transaction and negotiated about the contracting out before and after executing it. What remains unclear, however, is what role the pre-existing collective bargaining agreement and, perhaps more important, the Arbitrator's construction of it, played in the ALJ-Board rationale.

■ The Court generally upholds NLRB decisions that are based on substantial evidence because of the Board's special expertise in the labor field. Our deferential standard of review, however, is predicated on our confidence that the Board has examined all relevant factors in making its final determination. In the present case, we cannot display that confidence because the Board's holding that the Union must bargain with Olympic does not adequately address the relevancy of the arbitration award that declared the later subcontract illegal.

■ Petitioner claims that the Board overlooked the implications of the arbitration award and instead treated the Arbitrator's interpretation of the contract as immaterial. Petitioner emphasizes, for example, that the entire collective bargaining agreement construed by the Arbitrator was not even in the record before the ALJ and the Board. The erroneous construction of the collective bargaining agreement made it possible, says petitioner, for the Board to apply the *Fiberboard* decision without any reference to a contract violation by the employer and to decide for the employer solely because it had complied with the "bare requirements" of *Fiberboard* by giving notice to the Union and bargaining with it about the Olympic transaction. If it were crystal clear that the Board had so completely ignored the contract and the award and thereby misapplied *Fiberboard*, we would confront the policy, initiated long

---

11. *Collyer Insulated Wire v. NLRB*, 192 NLRB 837 (1971), *cited with approval in Associated Press v. NLRB*, 160 U.S.App.D.C. at 400–402, 492 F.2d at 666–68.

ago by the Board itself, that it exercise its discretion to defer to arbitrators' awards in order to encourage voluntary resolution of disputes by grievance and arbitration, *e. g., Spielberg Manufacturing Company v. NLRB*, 112 NLRB 1080 (1955); *Collyer Insulated Wire, et al. v. NLRB*, 192 NLRB 837 (1971); *Associated Press v. NLRB*, 160 U.S. App.D.C. at 401; 492 F.2d at 667; *Retail Clerks Local 588 v. NLRB*, 184 U.S.App. D.C. 194, 565 F.2d 769 (1977). As a panel of this Court observed in a related context, the Board should not generally give *de novo* consideration to an issue, such as the contract here at issue, which an arbitrator might resolve. *Associated Press v. NLRB*, 160 U.S.App.D.C. 396, 401 F.2d 622 (1974). Failure by the Board to give appropriate consideration to an arbitrator's construction of a collective bargaining agreement could "thwart the strong policy favoring private dispute-solving mechanisms." *Retail Clerks Local 588 v. NLRB*, 184 U.S.App.D.C. at 202 n. 20, 565 F.2d at 777 n. 20.

But it is not completely clear that the Board so flagrantly ignored the contract as interpreted in the award as to require reversal of its decision. Although the entire contract was not in the record, the section construed by the Arbitrator is set out in his decision. App. 180. Also, the ALJ stated (albeit in a footnote) that there is no language in the part of the agreement construed by the Arbitrator "that prohibits or limits subcontracting by the employer." App. 200, n. 5. Thus, the ALJ and the Board may have indeed confronted the Arbitrator's interpretation of the contract, and rejected it, more or less *sub silentio*.

■ Ultimately, in terms of absolute power, unless the Board's differing construction of the contract from the Arbitrator is arbitrary and capricious, the Board's interpretation is entitled to precedence. *See, e. g., Carey v. Westinghouse Corp.*, 375 U.S. at 271, 84 S.Ct. 401. Nonetheless, it is important that disputants continue to be attracted to arbitration for resolution of differences that are susceptible to arbitration.

This dispute, insofar as it rotates around the meaning of the collective bargaining agreement, is "the very stuff of labor contract arbitration." The Arbitrator may have erroneously imported the collective bargaining agreement into his decision-making when, in the eyes of the Board, none of the terms of the agreement had any application to contracting out. But, before the Board reached a result contrary to the Arbitrator, it should have spoken directly and fully to the issue he decided: Did the collective bargaining agreement apply to contracting out? If so, did the contracting out transaction here violate that agreement?

■ We could, of course, attempt ourselves to resolve the questions by reading between the lines of what the ALJ and the Board have written. But we owe to the Board a deference to its expertise which parallels that owed by the Board to the special values of arbitration. We conclude, therefore, that, whatever the final result, the Board should explicitly discuss the implications of the collective bargaining agreement as interpreted by the Arbitrator, both because adequate review of the Board's decision cannot be completed without a full explanation of its reasoning and because the respect due the arbitral process requires as much.

Accordingly, we remand the case to the Board for further analysis of the collective bargaining agreement, the Arbitrator's award, and the ALJ's opinion in light of the strong policy favoring deference to the Arbitrator's interpretations of collective bargaining agreements.

*Judgment Accordingly.*