**RICHMOND TANK CAR COMPANY,**
Petitioner-Cross-Respondent,

v.

**NATIONAL LABOR RELATIONS BOARD,**
Respondent-Cross-Petitioner.

No. 82–4430.

United States Court of Appeals,
Fifth Circuit.

Dec. 19, 1983.

Daniel O. Goforth, Barry Abrams, Houston, Tex., for petitioner-cross-respondent.

Elliott Moore, Deputy Assoc. Gen. Counsel, Howard E. Perlstein, Elaine Patrick, N.L.R.B., Washington, D.C., for respondent-cross-petitioner.

Before RUBIN, GARWOOD and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Richmond Tank Car Company ("Richmond") petitions this court for review of a September 28, 1982, order issued against it by the National Labor Relations Board ("Board"). The Board, declining to defer to an arbitration award in favor of the company, found Richmond in violation of sections 8(a)(1) and (3) of the National Labor Relations Act ("Act") for discharging its employee, James Rowell, for engaging in protected union activities. We hold that the Board abused its discretion in refusing to defer to the arbitrator's award, and deny enforcement of the Board's order.

I.

Richmond is engaged in the business of cleaning, repairing, painting and sandblasting railroad tank and hopper cars at its plants in Sheldon and Angleton, Texas. Its employees in Angleton are represented by Local 469, International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers, AFL–CIO ("Union"). James Rowell was a Union steward at the Angleton plant.

The events leading to Rowell's discharge began on June 15, 1978. On that day, Rich-

mond's switch engine was being used to move railroad cars between the plant's paint shop and its repair shop. At the same time, employees of the Missouri Pacific Railroad were moving some railroad cars over to the Angleton plant by means of a track which connected that plant with the Missouri Pacific freight yard. This connecting track divides into twelve spur tracks which lead to Richmond's car storage area, paint shop, repair shop, and cleaning shop. Because Missouri Pacific employees neglected to switch the track, the cars were aligned to roll into a work area at Richmond's plant rather than into the car storage area. As a result, when the cars were uncoupled, they began rolling toward the work area where the switch engine was being operated. The cars crashed into the switch engine. This crash caused the switch engine operator to be thrown from the switch engine. As a result of the crash, he was hospitalized for a short time and was absent from work for seven weeks.

On the following day, employees, after learning of the accident, became concerned about Richmond's failure to install a derailing system, i.e., a mechanical device to stop runaway cars. On June 19, 1978, about thirty employees gathered at Rowell's home. They complained about the lack of a derailing system and about Richmond's failure to provide adequate filters for the respirators they wore when cleaning tank cars which had been used to transport noxious gases. They informed Rowell that they were going to walk out in protest of these conditions.

On June 20, Rowell led a walkout. As Rowell was walking off the job with several other employees, the plant superintendent, Clebern Sigley, approached and asked, "What the hell is going on?" Rowell replied that the men were walking out because of unsafe conditions and that Sigley "wasn't worth a shit and ... wasn't no

good as a plant manager." About forty employees walked out with Rowell.

On June 23, after Richmond installed a locking derail system · and made other changes, Rowell inspected the changes and reported his findings to the striking employees. After talking with Rowell, the employees returned to work later that day.

Following the employees' return to work, Richmond conducted an investigation into the causes of the walkout. Richmond determined that the work stoppage was not approved or sanctioned by the Union and was therefore in violation of the parties' collective bargaining agreement.[1] Richmond further determined that the work stoppage was instigated and led by Rowell in direct violation of the collective bargaining agreement. Finally, it determined that Rowell's profane and inflammatory verbal assault on the plant manager violated Richmond's rules and exceeded all standards of acceptable employee conduct under any circumstances. Based on these determinations, Richmond discharged Rowell on July 21, 1978.

## II.

The Union filed a grievance concerning Rowell's discharge which was pursued through arbitration. In his award, the arbitrator found that Rowell had participated in a walkout to protest abnormally dangerous working conditions and that the walkout was protected by sections 7 and 502 of the Act. He further found, however, that the collective bargaining agreement required employees to obtain the Union's approval before engaging in a walkout and that Rowell had not secured this approval before walking out. The arbitrator also found that Rowell's statement to the plant manager could not be excused by his status as a Union steward, by his age and service, or by Richmond's willingness to condone profanity. He concluded that under the

---

1. Section 2(c) of Part 4 of the Articles of Agreement between Richmond and the Union provides:

In the event of any employee or employees stopping work without approval of the Un-

ion, such employees shall be subject to immediate discharge or replacement by other employees.

contract Richmond was entitled to discharge Rowell either because he did not secure the Union's prior approval for the walkout or because he used profane language in addressing the plant superintendent.

Following the issuance of the arbitration award, the Union filed an unfair labor practice charge against Richmond which alleged that it had violated sections 8(a)(1) and (3) of the Act by discharging Rowell for participating in a protected work stoppage. After a hearing, an administrative law judge, deferring to the arbitration award, recommended dismissal of the complaint.

On appeal to the Board, however, the administrative law judge's recommendation was rejected. The Board, disagreeing with the administrative law judge, refused to defer to the arbitration award upholding Rowell's discharge. The Board unanimously found that the arbitrator's ruling—that Rowell was discharged for just cause for engaging in the walkout because he did not secure the Union's prior approval—was repugnant to the Act because the arbitrator failed to give the protection provided by section 502 of the Act precedence over the contract requirements. A majority of the Board also found that the arbitrator's ruling—that Rowell was discharged for just cause because of the language he used during the protected walkout—was also repugnant to the Act because the arbitrator had failed to analyze Rowell's language as part of the *res gestae* of protected concerted activity, as required by established legal principles.[2]

**2.** The dissenting Board member was of the opinion that the arbitrator had considered Rowell's language within the context of his protected concerted activity and that the arbitrator's conclusion on this question was neither repugnant to the Act nor wholly at odds with existing Board precedent. Accordingly, he would defer to the arbitration award.

**3.** 29 U.S.C. § 160(a) provides in part:
The Board is empowered, as hereinafter provided to prevent any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce. This

### III.

Recognizing that the standard of review which must be applied here is an abuse of discretion standard, *NLRB v. South Central Bell Telephone Co.,* 688 F.2d 345, 350 (5th Cir.1982), Richmond contends that the Board abused its discretion in refusing to defer to the arbitrator's decision because the record shows that the arbitrator did in fact consider Rowell's language within the context of his protected activity.

Resolution of the issue of whether the Board's refusal to defer to an arbitrator's decision should be upheld requires an accommodation between two important policies: the policy favoring the exercise of jurisdiction by the Board to prevent unfair labor practices[3] and the policy favoring the "settling of labor disputes by arbitration." *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 578, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409 (1960); *Gateway Coal Co. v. United Mine Workers of America,* 414 U.S. 368, 377–79, 94 S.Ct. 629, 636–37, 38 L.Ed.2d 583 (1974).[4]

The task of resolving that accommodation in any particular case is, in the first instance, the Board's, and to that end it has wide discretion to decide whether to defer. Where the Board chooses not to defer, we will not deny enforcement unless the Board clearly departs from its own standards on deferral. *See Hawaiian Hauling Service, Ltd. v. NLRB,* 545 F.2d 674, 676 (9th Cir. 1976), *cert. denied,* 431 U.S. 965, 97 S.Ct. 2921, 53 L.Ed.2d 1061 (1977).

power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise: . . . .

**4.** Labor Management Relations Act, section 203(d), 29 U.S.C. § 173(d), provides, in part:
Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement. . . .

The Board's standards for deferring to arbitrator's awards are set forth in *Spielberg Manufacturing Company,* 112 NLRB 1080 (1955). These standards bind the Board and this court. *South Central Bell Telephone Co.,* 688 F.2d at 350. In *Spielberg,* the Board announced that it would defer to an existing arbitration award and dismiss the unfair labor practice charge where (1) the arbitration proceeding appeared to have been fair and regular, (2) all parties agreed to be bound, and (3) the arbitrator's decision was not clearly repugnant to the purposes and policies of the Act.

Here, the Board's decision that deferral would be repugnant to the Act is based on its conclusion that the arbitrator did not pass on the unfair labor practice aspects of the discharge because he did not consider whether Rowell's language was indefensible in the context of his protected activity.[5] Therefore, the Board's reliance on *Spielberg*'s repugnance criterion does not rest on the repugnance of the result the arbitrator

reached, but rather on his failure to consider that the remarks were made in the context of otherwise protected activity.

From our review of the arbitrator's decision, we find that the arbitrator clearly considered the Union's claim that Rowell's profanity did not warrant his discharge because it occurred in the context of activities protected by section 7 of the Act. As the dissenting Board member noted, the majority's assertion that the arbitrator failed "to evaluate Rowell's language as part of the *res gestae* of concerted protected activity" is based on its reference to the "Conclusions" section of the arbitrator's opinion and the misleading implication that this section contains the sum and total implication of the arbitrator's comments on the Union's claim. Other portions of that opinion establish beyond any doubt that the arbitrator considered the abusive remarks made by Rowell in the context of his participation in the protected activity.[6]

5. In *Raytheon Co.,* 140 NLRB 883 (1963), *enforcement denied on other grounds,* 326 F.2d 471 (1st Cir.1964), the Board held that it would not defer to an arbitrator's decision if the arbitrator failed to consider and rule on the unfair labor practice issue. Several courts have chosen to integrate this fourth requirement into their analysis of whether the third *Spielberg* requirement has been met. These courts hold that the arbitrator's failure to consider and rule on the statutory issue actually leads to a decision clearly repugnant to the Act and thus a failure to meet the third *Spielberg* requirement. See *Bloom v. NLRB,* 603 F.2d 1015 (D.C.Cir. 1979); *Dreis & Krump Mfg. Co., Inc.,* 544 F.2d 320 (7th Cir.1976); *Banyard v. NLRB,* 505 F.2d 342 (D.C.Cir.1974). Regardless of whether it is integrated into *Spielberg*'s "clearly repugnant" requirement or considered as a separate requirement, it will be met if there is substantial and definite proof that the unfair labor practice issue and evidence were expressly presented to the arbitrator and that his decision indisputably resolved the unfair labor practice. *Stephenson v. NLRB,* 550 F.2d 535, 540 (9th Cir.1977).

6. As noted by the dissenting Board member, the arbitrator stated at page 11 of his opinion:

The Union also argued that the conversation took place at a time when the Grievant was in the process of a work stoppage and had already told his supervisor that he was not going to work, and he was walking out because of unsafe working conditions; and he told the Plant Manager the same thing before uttering the disparaging statements.

It contended that the two men were not speaking to each other as employee and supervisor on the job, but rather that the Grievant was in the exercise of his Section 7 rights to engage in a work stoppage, and the two men were not speaking to each other as employee and supervisor, but rather as equals under the mandate of the law. It maintained that when stewards are engaged in the presentation of grievances to supervision they are legally equals to management, and may not be terminated for the use of profane or derogatory language, and therefore the Grievant cannot be disciplined for strong language utilized during his discussion with the Plant Manager.

. . . .

This Arbitrator has carefully considered the arguments and studied the cases cited by both parties.

Regarding the argument that Rowell's discharge was not warranted because his profanity occurred during section 7 activity, on page 13 of his opinion, the arbitrator found:

As to the Union's contention that the Grievant's statement was "protected" because he was acting as a Union official rather than an employee, the common thread that runs through all the cases discussed above, including those relied upon by the Union, is that the steward's statements may not be malicious, a verbal assult (sic) or personally insulting and abusive of the supervisor. The Arbitrator concludes that the Grievant's language in this case went beyond the limit of

For the reasons discussed above, there is more than substantial evidence that the arbitrator, in deciding the contract issue, considered the statutory protection afforded Rowell by section 7 of the Act.[7] As a result, the Board's refusal to defer to the arbitrator's decision that Richmond was entitled to discharge Rowell was an abuse of discretion. Accordingly, we deny enforcement of the Board's decision ordering Richmond to cease and desist from its unfair labor practices and to reinstate James Rowell with back pay.[8]

ENFORCEMENT DENIED.

permissible conduct by an employee who is acting in the course of his duties as a Union representative.

. . . .

In sum, it is found that the abusive and derogatory language used by the Grievant toward the Plant Manager cannot be excused on any theory, and standing alone, constitutes a dischargeable offense as defined in Major Rule 16 of the General Plant Policies and Rules.

In his opinion, the arbitrator also cited and discussed decisions in several cases which concerned the discipline accorded to union representatives who made intemperate remarks while engaged in concerted protected activity.

7. To meet its burden in showing that the Board abused its discretion in refusing to defer to the arbitration award, Richmond need only have shown that there was some evidence or indication that the arbitrator considered the statutory protection afforded Rowell by section 7. *See Hammermill Paper Co. v. NLRB*, 658 F.2d 155 (3d Cir.1981); *NLRB v. General Warehouse Corp.*, 643 F.2d 965 at 969 (3d Cir.1981).

8. Because of our disposition of this case, we find it unnecessary to decide whether the Board's finding that Rowell's discharge violated section 8(a)(3) and (1) of the Act was supported by substantial evidence or whether the Board abused its discretion by refusing to defer to the arbitrator's decision that Richmond was contractually entitled to discharge Rowell because the employees had not secured the Union's prior approval of the work stoppage.