**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CLAYTON CONSTRUCTION CORPORATION, Respondent.**

No. 80–1865.

United States Court of Appeals, Eighth Circuit.

Submitted June 17, 1981.

Decided June 24, 1981.

---

Linda B. Weisel, Washington, D. C., for petitioner.

Nicholas R. Fiorella, Springfield, Mo., for respondent Clayton Const. Corp.

Before McMILLIAN and ARNOLD, Circuit Judges, and HANSON,* Senior District Judge.

PER CURIAM.

The National Labor Relations Board (the Board) petitions this court for enforcement of its order requiring the Clayton Construction Corp. of Urbana, Missouri (the Company) to immediately reinstate Floyd Groves as a Union steward and "make him whole for any loss of wages he may have suffered" by reason of the unlawful termination in violation of § 8(a)(1) and (3) of the National Labor Relations Act (the Act). For the reasons discussed below, we enforce the order.

The Board, adopting the findings of the administrative law judge (ALJ), concluded that Floyd Groves was discharged because of a good faith protest about the Company's assignment of work to certain employees in violation of its ·agreement with the Union. For reversal the Company argues that (1) the record fails to contain substantial evidence to support the conclusion that Groves was engaged in protected union activity at the time of his discharge and (2) Groves was discharged because of flagrant and persistent insubordination.

Larry Clayton is the Company's president and principal stockholder. As president, Mr. Clayton exercises responsibility for hiring, firing and supervising assigned work. In May, 1977, Mr. Clayton signed a collective bargaining agreement with the Union and has followed the terms of the agreement at the Urbana job site.

Floyd Groves was hired by the Company in March, 1978, and was appointed Union steward in 1979 and served in that capacity until July 16, 1979, when he was discharged.

The events that took place on July 16 are the crux of this dispute. It is conceded that Mr. Groves was terminated because of his actions on that day and that he would not have been terminated otherwise.

On the morning of July 16, 1979, a piece of equipment was unexpectedly put out of operation for the day. As a result, Larry Clayton sought to shift working assignments among his employees so as to maintain production. A supervisor of the Company approached certain employees during their lunch break and told them of the afternoon's work assignments. The assignments included placing Groves on one machine and assigning Clint Harmon as an operator of another machine to work on the main sewer line.

Clint Harmon was employed by the Company as a laborer during normal work hours. After normal work hours, Harmon worked as an independent contractor for the Company. Harmon was not a member

of the Union and thus, pursuant to the collective bargaining agreement, was not to operate equipment on the main sewer lines but rather was to limit his work to equipment on the lateral lines.

Groves, the Union steward, raised a question with Mr. Clayton about the job assignments made by his immediate supervisor on July 16. The substance of the conversation which took place at a separate location on the site is in dispute. Because of what was said during the conversation, Larry Clayton discharged Groves.

The conflicting testimony concerning what was said during the conversation required the ALJ to determine the credibility of various witnesses. After reviewing the testimony concerning the July 16 conversation and the events which took place that day, the ALJ found Larry Clayton to be an uncredible, impulsive and belligerent witness. The ALJ credited the testimony of Groves and Harmon concerning the conversation and the sequence of events.

The Board adopted the ALJ's findings without any substantial revision. Specifically, the Board found that (1) the Company unlawfully discharged Groves and (2) such discharge violated Groves' rights guaranteed him under § 8(a)(1) and (3) of the Act. Our study of the briefs and the record convinces us that there was substantial evidence on the record as a whole to justify the Board's conclusion.

This court has consistently held that such activity is protected, even if the assertion made by the union steward is ultimately incorrect. *Keokuk Gas Service Co. v. NLRB,* 580 F.2d 328, 333 (8th Cir. 1978); *see also May Department Stores Co. v. NLRB,* 555 F.2d 1338, 1339–40 (6th Cir. 1977); *Metal Blast, Inc. v. NLRB,* 324 F.2d 602, 603 (6th Cir. 1963). Mere inquiry into the circumstances of an assignment does not constitute insubordination meriting discharge. *See Dutchess Furniture, Division of National Service Industries, Inc.,* 222 N.L.R.B. 42 (1976).

We also find that the remedy ordered in this case was within the Board's authority. *Florida Steel Corp.,* 231 N.L.R.B. 651 (1977); *F.W. Woolworth Co.,* 90 N.L.R.B. 289 (1950).

Accordingly, the Board's order is enforced.