## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## CHELSEA LABORATORIES, INC., Respondent.

### No. 1287, Docket 87–4022.

United States Court of Appeals, Second Circuit.

Argued June 26, 1987.

Decided Aug. 3, 1987.

---

Martin Gringer, Hewlett, N.Y. (Milman, Naness & Pollack, Hewlett, N.Y., of counsel), for respondent.

Gordon Scott, Atty., N.L.R.B., Washington, D.C. (W. Christian Schumann, Supervisory Atty., Rosemary M. Collyer, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., of counsel), for petitioner.

Before LUMBARD, CARDAMONE, and PIERCE, Circuit Judges.

CARDAMONE, Circuit Judge:

This application is brought by the National Labor Relations Board (Board) for enforcement of its unfair labor practice order issued against Chelsea Laboratories, Inc. (respondent, Chelsea Labs, or employer). The Board, in an opinion reported at 282 NLRB No. 74 (1986), found that respondent had violated § 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) (1982), by discharging an employee engaged in protected concerted activity. The Board's action raises a novel question: whether the concerted activity of employees promoting a new union is protected even though the old union has not yet been officially decertified. We conclude that it is and grant enforcement.

I

The Board made the following findings of fact. Respondent's employees were represented by Local 918 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Local 918). On October 9, 1984 Jose Velez, the shop steward, filed a decertification petition. A decertification election was held on November 30, 1984, at which Kismath Sooknanan, a member of Local 918's employee negotiating committee, served as

Velez's observer. A majority of the employees voted to decertify Local 918.

Several months later, while objections to the election were still pending, Chelsea Labs sent its employees a letter thanking them for rejecting union representation, informing them that they would recieve a wage increase retroactive to December 1984, and explaining their eligibility to participate in a new profit sharing plan. The employees also were congratulated in the letter for "deciding to join the over eighty (80%) percent of the workforce ... that is non-union." Another employee asked Sooknanan about the letter, inquiring specifically whether a new local was coming in or whether the company was going non-union. This employee expressed her belief that there would be no wage increase until the still pending decertification process was completed.

Sooknanan, who shared her view about the raise, was concerned because Chelsea Labs' president had earlier told him that there would be "a dialogue" before a decision was made to recognize a new local. Therefore, together with shop steward Velez, Sooknanan went to see the employer's president, Getrajdman, to question him about the letter. At the meeting, Sooknanan asked about the raise and the promised "dialogue." Getrajdman responded that: "Whatever the letter says, that is what is going to be." Sooknanan replied, "What are you trying to do, push things down people's throats?" During the ensuing discussion both parties apparently raised their voices and Getrajdman told Sooknanan, "You cannot speak to me that way, I'm the President." He then fired Sooknanan and ordered him out of the office. The Board concluded that Sooknanan's discharge was an unfair labor practice and ordered the employer to reinstate him and to make him whole for any loss of earnings or other benefits.

## II

Respondent challenges the Board's order on several grounds. It contends first that the Board's complaint did not give reasonable notice of the theory eventually accepted by the administrative law judge. The Board alleged in its complaint that Sooknanan was discharged for objecting to the employer's offer of a raise while the decertification process was continuing. At the hearing before the ALJ it became clear that Sooknanan was an advocate for a new union local and that he went to Getrajdman to object to the raise without the promised "dialogue" respecting the recognition of a new local. To Sooknanan, the raise indicated that respondent had decided not to recognize the new local. The ALJ found that Sooknanan was discharged for bringing this complaint and that such a discharge was an unfair labor practice. Chelsea Labs argues that the ALJ's finding was based on a theory not contained in the complaint.

In order to find an unfair labor practice, the Board must afford an alleged violator notice and an opportunity for a hearing. In *N.L.R.B. v. Coca Cola Bottling Co. of Buffalo, Inc.*, 811 F.2d 82 (2d Cir.1987), we had occasion recently to address the problem of "those cases where the facts adduced at the hearing before the ALJ fit a violation other than as charged in the complaint." *Id.* at 87. An "uncharged violation may only be found by the ALJ if all issues surrounding the violation have been litigated fully and fairly." *Id.* Here, the employer asserts that it did not have the opportunity to question either the factual or legal issues underlying the ALJ's finding of a violation. We disagree.

Chelsea Labs demonstrated its awareness of the "dialogue" theory. It addressed the legal issues as early as its first answer to the NLRB's complaint. Its claim that if it had notice it would have been able to challenge the factual predicate of the "dialogue" theory—that the employer had actually promised a dialogue—also fails. It is not clear that the claim of an unfair labor practice would be unavailing, even were there no promise of a dialogue. *See N.L.R.B. v. Clayton Construction Corp.*, 652 F.2d 6, 8 (8th Cir.1981) (per curiam) (mere inquiry to employer about job assignment protected even when incorrect). Further, respondent did not object

to the ALJ's factual findings on review before the Board, and, absent extraordinary circumstances, a party may not urge in this Court objections not made before the Board. 29 U.S.C. § 160(e) (1982).

■ The employer also contends that Sooknanan was discharged for rudeness and insubordination. In the bargaining context, we have held that "[a]n employee is protected by § 7 in her good faith, albeit impulsive, conduct.... A certain amount of salty language or defiance will be tolerated." *American Telephone & Telegraph Co. v. N.L.R.B.*, 521 F.2d 1159, 1161 (2d Cir.1975). *See also Clayton Construction Corp.*, 652 F.2d at 8 (mere inquires do not constitute insubordination meriting discharge). The responsibility for balancing the employee's conduct against an employer's ability to maintain order "rests with the Board, whose decision, if supported by substantial evidence, will not be disturbed unless it is arbitrary or illogical." *American Telephone & Telegraph Co.*, 521 F.2d at 1161. We see no reason to disturb the Board's finding on this account.

■ Respondent's third claim is that Sooknanan's meeting with Getrajdman was not concerted activity because Sooknanan was only expressing his own individual concern regarding the promised dialogue. On the contrary, the record makes clear that Sooknanan was accompanied to this meeting by shop steward Velez and was acting on behalf of other employees as a member of the employee negotiating committee. His inquiry is not therefore rendered "unconcerted", as the employer claims, simply because the employee who discussed the letter with Sooknanan may not have been aware that Chelsea Labs had promised to conduct a dialogue before granting a raise. *See Meyers Industries, Inc.*, 268 NLRB 493, 497 (1984) ("In general, to find an employee's activity to be 'concerted,' we shall require that it be engaged in with or on the authority of other employees...."), *rev'd sub nom., Prill v. N.L.R.B.*, 755 F.2d 941 (D.C.Cir.), *cert. denied*, 474 U.S. 948, 106 S.Ct. 313, 88 L.Ed.2d 294 (1985).

■ Finally, the respondent's principal contention is that Sooknanan's activity, even if concerted, was not protected because Sooknanan's request for a dialogue was an attempt to undermine the existing collective bargaining representative. The employer relies on *Emporium Capwell Co. v. Western Addition Community Organization*, 420 U.S. 50, 95 S.Ct. 977, 43 L.Ed.2d 12 (1975), in which the Supreme Court ruled that minority employees who repudiated a contractual grievance mechanism and sought to compel separate bargaining by exerting economic pressure through picketing and leafletting were not engaged in protected activity under § 7 of the National Labor Relations Act. *Id.* at 69–70, 95 S.Ct. at 988.

We begin by observing that if Local 918 had been officially decertified at the time of Sooknanan's request for the promised dialogue, it would be clear that this activity was protected. Sooknanan's protest to Getrajdman expressed a concern which went to the very heart of section 7—that is, whether the company was going to recognize a new union local as the employees' collective bargaining representative. Sooknanan need not be acting on behalf of a union or an otherwise formally organized group. We have long held that concerted activity is protected under § 7 where the employees are simply acting together for mutual aid. *N.L.R.B. v. Pratt & Whitney Air Craft Division, United Technologies Corp.*, 789 F.2d 121, 127 (2d Cir.1986); *N.L.R.B. v. Columbia University*, 541 F.2d 922, 931 (2d Cir.1976).

Respondent's argument that *Emporium Capwell* somehow requires a different result because the old union had not yet been decertified is not persuasive. *Emporium Capwell* did not place all activity aimed at replacing the existing union outside of § 7's protection. Rather, *Emporium Capwell* withdrew § 7 protection from activities which are destructive to the collective bargaining process. *See* 420 U.S. at 69–70, 95 S.Ct. at 988.

These concerns are not implicated here. Sooknanan's request for a dialogue was not a demand that Chelsea Labs recognize the employee committee as a full-fledged bargaining representative. Rather, he was

merely insisting that the employer adhere to its promise to talk with the employees about a new local, after the prior local's decertification process was complete. Nor does Chelsea Labs claim that Sooknanan's activities were inconsistent with the existing grievance mechanism. In short, Sooknanan's conduct that was intended to pave the way for a new union local and which was clearly not destructive of the old union, is deserving of § 7's protection, even under *Emporium Capwell.*

### III

Accordingly, for the reasons stated above, the NLRB's petition for enforcement is granted.